UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

STEVEN DUNCAN, Individually and on
Behalf of All Others Similarly Situated,
4000 Meridian Street, #12GF
Indianapolis, IN 46208,

        Plaintiff,

vs.

JOY GLOBAL INC.,
100 East Wisconsin Avenue, Suite 2780
Milwaukee, WI 53202

KOMATSU LTD.,
2-3-6 Akasaka
Minato-ku, Tokyo

KOMATSU AMERICA CORP.,
1701 West Golf Road
Rolling Meadows, IL 60008,

PINE SOLUTIONS INC.,
c/o Registered Agent
The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801,

EDWARD L. DOHENY II,
2300 West Cedar Lane
Milwaukee, WI 53217,

JOHN NILS HANSON,
3008 Pescadero Cove
Austin, TX 78746,

STEVEN L. GERARD,
3 Mallory Lane
Redding, CT 06896,

MARK J. GLIEBE,
13055 Promontory Trial
Roscoe, IL 61073,

Civil Case No.  16-CV-01229

CLASS ACTION

DEMAND FOR JURY TRIAL

JOHN T. GREMP,
8830 Stable Crest Blvd.
Houston, TX 77024,

GALE E. KLAPPA,
1522 N. Prospect Ave., Unit 1102
Milwaukee, WI 53202,

RICHARD B. LOYND,
19 Randall Drive
Short Hills, NJ 07078,

P. ERIC SIEGERT,
140 West 79th Street, Apt. 4E
New York, NY 10024,

JAMES H. TATE,
17605 Lasiandra Drive
Chesterfield, MO 63005,

                      Defendants.

---

## COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND VIOLATIONS OF §§14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934

---

Plaintiff Steven Duncan ("plaintiff"), individually and on behalf of all others similarly situated, respectfully brings this direct class action complaint for breach of fiduciary duty and violations of §§14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9 promulgated thereunder against the herein named defendants and alleges the following:

### SUMMARY OF THE ACTION

1.      This is a direct stockholder class action brought by plaintiff on behalf of the holders of Joy Global Inc. ("Joy Global" or the "Company") common stock against Joy Global, its Board of Directors (the "Board"), Komatsu Ltd., a Japanese joint stock company, Komatsu America Corp., a Georgia corporation and the U.S. subsidiary of Komatsu Ltd. ("Parent"), and Pine Solutions Inc., a Delaware corporation and wholly owned subsidiary of Parent ("Merger Sub," and with Komatsu Ltd. and Parent, "Komatsu"), for breaches of fiduciary duty, aiding and abetting breaches of fiduciary

duty and/or other violations of federal law arising out of defendants' efforts to complete the sale of Joy Global to Komatsu pursuant to an unfair process and for an unfair price (the "Proposed Acquisition"). This matter arises out of defendants' dissemination of a false and misleading proxy statement in violation of §§14(a) and 20(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder, and the Board's breaches of fiduciary duties owed to the Company's shareholders under state law.

2.      Joy Global is a leading provider of advanced equipment, systems and direct services for the global mining industry. On July 21, 2016, defendants announced that they had entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which Komatsu will purchase all of Joy Global's outstanding shares for the inadequate price of $28.30 per share. Pursuant to the Merger Agreement, Joy Global will become a wholly owned subsidiary of Parent if the Proposed Acquisition closes (the "Merger").

3.      The Proposed Acquisition is the result of an unfair sales process designed to ensure that only Komatsu has an opportunity to acquire the Company. The Proposed Acquisition was driven by the Board and members of Company management who seek through the deal to secure liquidity for their hundreds of thousands of shares of illiquid Joy Global stock. Moreover, the Board members agreed to deliver the Company to Komatsu in order to secure special, material benefits for themselves and management as a result of the Proposed Acquisition, including the accelerated vesting and monetization of illiquid equity holdings in the Company and change-of-control severance payments, which will provide tens of millions of dollars in gains to the Board and members of Joy Global's management.

4.      Due to the unresolved conflicts that have infected the process leading to the Proposed Acquisition, the Board utterly failed to shop the Company to other potential buyers, even though it was informed by its financial advisor that competing buyers existed who would have been capable of making a competing bid for the Company. The sole justification the Board offered for not shopping the Company was the possibility of a leak that *might* impact a Komatsu transaction or Joy Global's standalone business. Such conduct flies in the face of the Board's duty to maximize shareholder

value where, as here, the Company is for sale and the Board has a duty to secure the best price possible.

5.     The Proposed Acquisition significantly undervalues Joy Global.  The $28.30 per share merger consideration represents a premium of only 20.5% based on Joy Global's average closing price for the past week.  This premium is significantly below the average one-week premium of nearly 37.3% for comparable transactions within the past five years.  According to Yahoo! Finance, an analyst at Avondale Partners LLC set a price target for Joy Global stock of $30.00 per share on June 2, 2016.  Moreover, Joy Global shares have traded as high as $65.36 per share on July 16, 2014, and most recently traded above the merger consideration – at $28.63 per share – on July 23, 2015.

6.     The Board further breached its fiduciary duties by agreeing to preclusive deal protection devices that make it nearly impossible for competing buyers to make a successful competing bid for the Company.  These provisions, which undermine shareholder value, include: (i) a no-shop clause that precludes the Company from communicating with or providing confidential Company information to potential competing bidders except under extremely limited circumstances; (ii) a matching rights provision that allows Komatsu to match any competing proposal; and (iii) a termination fee provision that requires Joy Global to pay Komatsu $75 million in the event the Proposed Acquisition is terminated in favor of a superior proposal.  The collective effect of these provisions has chilled any possibility of a post-signing market check.

7.     Further, in an attempt to secure shareholder support for the Proposed Acquisition, on September 2, 2016, defendants issued a materially false and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy").  The Proxy, which recommends that Joy Global shareholders vote in favor of the Proposed Acquisition, omits and/or misrepresents material information about the unfair sales process for the Company, conflicts of interest that corrupted the sales process, the unfair consideration offered in the Proposed Acquisition, and the actual intrinsic value of the Company on a standalone basis and as a merger partner for Komatsu.  Specifically, the Proxy omits and/or misrepresents the material information further detailed herein in contravention of §§14(a) and 20(a) of the 1934 Act and/or defendants' fiduciary duty of disclosure under state law.

- 4 -

8.     As explained herein, this information is material to the impending decision of Joy Global's shareholders on whether or not to vote in favor of the Proposed Acquisition.  As such, defendants' violations of §§14(a) and 20(a) of the 1934 Act and their breaches of fiduciary duty under state law to maximize shareholder value and disclose all material information in connection with a merger transaction threaten shareholders with irreparable harm for which money damages are inadequate.  Thus, plaintiff seeks injunctive relief to ensure that defendants cure their breaches of fiduciary duty and violations of §§14(a) and 20(a) of the 1934 Act before Joy Global shareholders are asked to vote on the Proposed Acquisition, and that defendants are not permitted to seek shareholder support of the Proposed Acquisition without complying with their duty under state law to maximize shareholder value and under the federal securities laws and state law to provide shareholders with all material information about the sales process, potential and actual conflicts of interest, the merger consideration, and the Company's intrinsic value.

9.     In addition, by agreeing to the Proposed Acquisition, each of the defendants has breached their fiduciary duties of loyalty, due care, independence, candor, good faith and fair dealing, and/or has aided and abetted such breaches.  Rather than acting in the best interests of the Company's shareholders, defendants have spent substantial effort tailoring the structural terms of the Proposed Acquisition to aggrandize their own personal interests and to meet the specific needs of Komatsu, which efforts will eliminate the equity interest of Joy Global's public shareholders.

10.     In essence, the Proposed Acquisition is the product of a hopelessly flawed process and a false and misleading Proxy that are designed to ensure the merger of Joy Global with Komatsu on terms preferential to Komatsu and defendants, and detrimental to plaintiff and Joy Global's shareholders.

11.     Plaintiff seeks to enjoin the shareholder vote and the Proposed Acquisition.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over all claims asserted herein pursuant to §27 of the 1934 Act for violations of §§14(a) and 20(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder.  The Court also has jurisdiction over this action pursuant to 15 U.S.C. §78bb(f)(3)(A)(i), because it is a class action based on the statutory or common law of Delaware, defendant Joy

Global's state of incorporation, and thus may be maintained in federal court. This Court has supplemental jurisdiction under 28 U.S.C. §1367.

13.     Venue is proper in this District because Joy Global has its principle place of business in this District at 100 East Wisconsin Avenue, Suite 2780, Milwaukee, Wisconsin. Plaintiff's claims arose in this District, where most of the actionable conduct has taken place, where most of the documents are electronically stored and where the evidence exists, and where virtually all the witnesses are located and available to testify at the jury trial permitted on these claims in this Court. Moreover, the Individual Defendants (as defined below), as Company officers and/or directors, have extensive contacts with this District. Furthermore, Komatsu has extensive contacts in this District through the conduct alleged herein.

## PARTIES

14.     At all material times, plaintiff Steven Duncan has been a shareholder of Joy Global.

15.     Defendant Joy Global is a Delaware corporation headquartered in Milwaukee, Wisconsin.

16.     Defendant Komatsu Ltd. is a Japanese joint stock company headquartered in Tokyo, Japan.

17.     Defendant Parent is a Georgia corporation headquartered in Rolling Meadows, Illinois, and the U.S. subsidiary of Komatsu Ltd.

18.     Defendant Merger Sub is a Delaware corporation and wholly owned subsidiary of Parent.

19.     Defendant Edward L. Doheny II is, and at all material times has been, President, Chief Executive Officer ("CEO") and a director of Joy Global.

20.     Defendant John Nils Hanson is, and at all material times has been, Non-Executive Chairman and a director of Joy Global.

21.     Defendant Steven L. Gerard is, and at all material times has been, a director of Joy Global.

22.     Defendant Mark J. Gliebe is, and at all material times has been, a director of Joy Global.

23. Defendant John T. Gremp is, and at all material times has been, a director of Joy Global.

24. Defendant Gale E. Klappa is, and at all material times has been, a director of Joy Global.

25. Defendant Richard B. Loynd is, and at all material times has been, a director of Joy Global.

26. Defendant P. Eric Siegert is, and at all material times has been, a director of Joy Global.

27. Defendant James H. Tate is, and at all material times has been, a director of Joy Global.

28. The defendants named above in ¶¶19-27 are sometimes collectively referred to herein as the "Individual Defendants" or the "Board."

## THE INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

29. Under applicable law, in any situation where the directors of a publicly traded corporation undertake a transaction that will result in either: (i) a change in corporate control; or (ii) a breakup of the corporation's assets, the directors have an affirmative fiduciary obligation to obtain the highest value reasonably available for the corporation's shareholders, and if such transaction will result in a change of corporate control, the shareholders are entitled to receive a significant premium. To diligently comply with these duties, the directors and/or officers may not take any action that:

(a) adversely affects the value provided to the corporation's shareholders;

(b) will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

(c) contractually prohibits them from complying with their fiduciary duties;

(d) will otherwise adversely affect their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders; and/or

(e) will provide the directors and/or officers with preferential treatment at the expense of, or separate from, the public shareholders.

-7-

30.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Joy Global, are obligated under applicable law to refrain from:

(a)     participating in any transaction where the directors' or officers' loyalties are divided;

(b)     participating in any transaction where the directors or officers receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

(c)     unjustly enriching themselves at the expense or to the detriment of the public shareholders.

31.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Acquisition, knowingly or recklessly violated their fiduciary duties, including their duties of loyalty, good faith and independence owed to plaintiff and other public shareholders of Joy Global.

32.     Because the Individual Defendants knowingly or recklessly breached their duties of loyalty, good faith and independence in connection with the Proposed Acquisition, the burden of proving the inherent or entire fairness of the Proposed Acquisition, including all aspects of its negotiation, structure, price and terms, is placed upon defendants as a matter of law.

**FACTUAL ALLEGATIONS**

**Background**

33.     Joy Global is a leading provider of advanced equipment, systems and direct services for the global mining industry.  The Company's P&H, Joy and Montabert branded equipment is a critical component of operations in a variety of commodity markets, including energy, hard rock and industrial minerals.  Based in Milwaukee, Wisconsin, Joy Global employs 12,000 people in 20 countries.

34.     Komatsu Ltd., established in 1921, is a diversified provider of industrial-use products and services.  While remaining an international leader in the field of construction and mining equipment, Komatsu Ltd. engages in other business, such as industrial machinery and vehicles,

logistics, electronics and other solutions-based operations. Based in Tokyo, Japan, Komatsu Ltd. employs more than 47,000 people globally on a consolidated basis.

35. Komatsu Ltd. operates in the United States through defendant Parent. If the Proposed Acquisition closes, Joy Global will become a wholly owned subsidiary of Parent.

36. Slow growth and a sluggish mining environment have been concerns for Joy Global. But Joy Global's order book has revived in the past two fiscal quarters. Before that, Joy Global's order book had declined at a compound annual growth rate of 28% since 2011. The decrease in backlog for both underground and surface mining was driven by continuous softness in commodity markets, and this trend impacted the mining capital expenditures of mining companies, directly affecting order books.

37. Although its backlog had been declining, the Company has started to show improvement on a quarterly basis. Joy Global's order backlog at the end of the fiscal 2016 first quarter (ended January 31, 2016) increased to $897 million, which was 2.7% higher than its $873 million order backlog at the end of the fiscal 2015 fourth quarter. Joy Global's order backlog at the end of the fiscal 2016 second quarter (ended April 30, 2016) increased to $976 million, which was 8.8% higher than its $897 million order backlog at the end of the fiscal 2016 first quarter.

38. As the Company's backlog has grown, and as the above-mentioned analyst's target indicates, Joy Global is poised for future growth.

**The Proposed Acquisition Is Announced**

39. Despite the turnaround in Joy Global's backlog and prospects, the Board decided – without a sales process – to sell the Company to Komatsu. On July 21, 2016, Joy Global and Komatsu announced that the two companies had entered into the Merger Agreement pursuant to which Komatsu will acquire Joy Global's outstanding shares for the inadequate price of $28.30 per share.

40. The press release announcing the Proposed Acquisition states in pertinent part:

**Joy Global announces agreement to be acquired by Komatsu in $3.7 billion all-cash transaction**

*Delivers substantial all-cash premium to Joy Global stockholders*

*Komatsu committed to long-term growth of Joy Global, which will operate as a separate subsidiary of Komatsu*

. . . Joy Global Inc. ("Joy Global"), a worldwide leader in high-productivity mining solutions, today announced that its Board of Directors has unanimously approved a definitive merger agreement under which Komatsu America Corp., a subsidiary of Komatsu Ltd. ("Komatsu"), will acquire Joy Global in a transaction valued at approximately $3.7 billion, including Joy Global's outstanding indebtedness. Under the terms of the agreement, Joy Global stockholders will receive $28.30 per share in cash for each outstanding share of common stock held, representing a 48% premium to the volume weighted average closing price of Joy Global's common stock for the 90 trading days and a 41% premium to the volume weighted average closing price of Joy Global's common stock for the 60 trading days prior to July 21, 2016.

Komatsu intends to operate Joy Global as a separate subsidiary of Komatsu and retain the strength of the Joy Global brand names. The companies will align the organization and operation for optimal customer support from Joy Global's headquarters in Milwaukee, Wisconsin. Komatsu and Joy Global's products and services are highly complementary and the combined organization will continue to focus on safety, productivity and life cycle cost improvement for customers. Komatsu plans to leverage both companies' leading technologies to pursue product and service innovation to enhance mine safety and productivity. In addition, the companies employ complementary strategies and are committed to an integrated direct sales and service model.

"This is a compelling transaction that delivers substantial and certain value to our stockholders as well as expanded options for our customers and employees going forward," said Ted Doheny, President and Chief Executive Officer of Joy Global. "We believe this is the right partnership to meet the evolving needs of our customers while furthering our ability to lead the mining industry with game-changing technologies and best-in-class products. Joy Global's Board of Directors, in making its determination, considered the challenging market conditions the company believes are likely to persist. The mining industry continues to face cyclical headwinds from oversupplied commodities and reduced end user demand resulting in cash flow restrictions for most producers, creating an increasingly challenging environment. We are also seeing structural changes in the U.S. and China coal industry.

"Our companies share similar cultures and values," Doheny continued, "and we expect many Joy Global employees to benefit from exciting career opportunities as part of an even larger, more diversified company. On behalf of the Joy Global Board and management team, we thank our dedicated employees for their continued hard work and commitment to solving mining's toughest challenges."

**Closing Conditions**

The transaction is subject to customary closing conditions, including approval by Joy Global stockholders, the expiration or termination of the applicable waiting period under the U.S. Hart-Scott-Rodino Antitrust Improvements Act and regulatory approvals in certain other jurisdictions. The transaction is expected to close by mid-2017.

The transaction is not subject to any financing conditions. Komatsu had total assets of JPY2, 614 billion ($25 billion) and total equity of JPY1, 517 billion ($14

billion) as of March 31, 2016 with a credit rating of A from S&P and A2 from Moody's.

**Advisors**

Goldman, Sachs & Co. is serving as financial advisor and Wachtell, Lipton, Rosen & Katz is serving as legal counsel to Joy Global. Mitsubishi UFJ Morgan Stanley Securities Co., Ltd. is serving as financial advisor to Komatsu, and Arnold & Porter LLP and Nagashima Ohno & Tsunematsu are serving as legal counsel.

## Disabling Conflicts Infect the Process

41. The Proposed Acquisition is the product of a fundamentally flawed process, undertaken in breach of the Board's fiduciary duties, and designed to ensure the sale of Joy Global to Komatsu on terms preferential to Komatsu and Company insiders.

42. The Proposed Acquisition is being driven by members of the Board and Company management who collectively control an illiquid block of over 917,000 shares of Joy Global common stock and seek liquidity or other special benefits for their illiquid holdings. The Proposed Acquisition offers that liquidity, and if it closes, members of the Board and Company management will receive over $25.8 million from the sale of their illiquid Joy Global holdings.

43. In addition, Joy Global's officers and directors will receive millions of dollars in special payments not being made to ordinary shareholders from the Proposed Acquisition, including millions of dollars in special payments for currently unvested stock options, performance units and restricted shares, all of **which shall, upon the Merger's closing, become fully vested and exercisable**. The Company's senior management is also entitled to receive from the Proposed Acquisition approximately **$26 million in change-of-control payments**. Thus, the Board is conflicted and serving its own financial interests rather than those of Joy Global's other shareholders.

44. Furthermore, the Board retained a conflicted financial advisor. For its services as a financial advisor, Goldman, Sachs & Co. ("Goldman Sachs") will receive **a success fee of $28.5 million that is wholly contingent on the completion of the Merger.**

## The Flawed and Conflicted Process

45. Komatsu made its first proposal to acquire Joy Global on February 23, 2016. Even though the Board rejected that first proposal, and two others made by Komatsu, it was not until its

June 6, 2016 Board meeting that the Board even considered seeking proposals from other potential acquirers. At that meeting, Goldman Sachs presented the Board with a list of companies that might be interested in and financially capable of acquiring Joy Global for a price at least equal to the price Komatsu would be willing to pay. The Board, however, determined – in breach of its fiduciary duties to Joy Global's shareholders – that it was not desirable to make any outreach to other potential bidders, but rather, it would focus on obtaining the highest price from Komatsu and the appropriate flexibility in an agreement with Komatsu to consider alternative bids that might arise.

46.     At the same June 6, 2016 meeting, the Board also revisited the financial projections for Joy Global's standalone plans under two different scenarios, which it had previously discussed on March 7, 2016. The ***first*** scenario reflected a slow recovery in the coal mining industry, and ***Joy Global's businesses potentially reaching the low point of the cycle in 2017***, and the ***second scenario reflected a more robust recovery***. At its March 7, 2016 meeting, the Board directed management to "to prepare a robust 'bottom's up' financial analysis that would reflect further thinking about the market conditions, for discussion at a subsequent meeting and ***for use by Goldman Sachs in any future financial analysis***." At the June 6, 2016 Board meeting, management informed the Board that, in response to the Board's March 7, 2016 request, management had prepared a "bottom's up" financial analysis containing additional information regarding certain aspects of Joy Global's business for compilation into a total company view of the future performance of the business, and that this more rigorous analysis resulted in a view that was closer to the first scenario involving a slow recovery in the coal mining industry.

47.     Even though the industry and Joy Global are in or just beyond the bottom of the cycle, the Board directed Goldman Sachs to use for its fairness analyses the first scenario, which indicated that Joy Global's business would reach the low point of the cycle ***in 2017***. As a result, Goldman Sachs's fairness analyses fail to reflect either the clear and recent recovery that Joy Global is enjoying in backlog orders or the historically based fact that Joy Global's business is cyclical and any analyses to determine a range of Joy Global per share values should have measured the Company at mid-cycle, rather employing the first scenario, which assumes the bottom of the cycle has not occurred. Moreover, the Proxy does not include the forecasts of the second scenario, a

material omission which prevents the Company's shareholders from evaluating Goldman Sachs's analyses and the fairness of the proposed per share price to be paid by Komatsu.

48.     Over the next few months, the Board repeatedly failed to revisit or declined the opportunity to open up the sales process in order to create an auction for the Company.  Instead, throughout the process the Board granted Komatsu *de facto* exclusivity.  The sole justification offered by the Board for not shopping the Company was the possibility of a leak that ***might*** impact a Komatsu transaction or Joy Global's standalone business.  Such conduct flies in the face of the Board's duty to maximize shareholder value where, as here, the Company is for sale and the Board has a duty to secure the best price possible.

49.     Thus, without conducting either a pre- or post-signing check of market interest in an acquisition of Joy Global, the Board accepted, in breach of its fiduciary duties to the Company's shareholders, the unfair price of $28.30 in cash per Joy Global share to sell the Company to Komatsu.

**The Conflicted and Unfair Process Led to an Unfair Price**

50.     The Proposed Acquisition significantly undervalues Joy Global.  The $28.30 per share merger consideration represents a premium of only 20.5% based on Joy Global's average closing price for the week before the deal was announced.  This premium is significantly below the average one-week premium of nearly 37.3% for comparable transactions within the past five years.  An analyst at Avondale Partners LLC set a price target for Joy Global stock of $30.00 per share on June 2, 2016.  Moreover, Joy Global shares have traded as high as $65.36 per share on July 16, 2014, and most recently traded above the merger consideration – at $28.63 per share – on July 23, 2015.

51.     Demand for mining equipment tumbled sharply from the commodity cycle's peak five years ago as China and other key markets slowed.  The Proposed Acquisition follows a flurry of consolidation in the sector over the past few years.  Over the long term, however, the mining equipment business is projected to grow, driven by population growth and rapid urbanization around the world.  In terms of mining techniques, economic rationale will call for the use of larger equipment in surface mining, as well as further development of underground mining.

52.     As indicated in the chart below, Joy Global's markets are cyclical and recently have been challenged (which has impacted the price of Joy Global stock, which as noted above, traded at over $65 per share in mid-2014). Therefore, any per share valuation of Joy Global should consider where it is in the cycle, which is currently near or at the bottom. There are signs of firming in the global commodities markets; however, the capex environment remains challenged. Joy Global noted in its earnings release that its fiscal 2016 second quarter results were better than expected, and its stock rebounded from a low of just under $9 per share to over $23 per share prior to the announcement of the Proposed Acquisition. Joy Global also noted that copper markets are stabilizing and both the iron ore and oil markets are improving. Coal, particularly in the United States, remains challenged; however, metallurgical coal and the steel markets are expected to improve this year. Despite end-market stability, customer cash flow remains weak and leverage is elevated, both of which are expected to negatively impact orders. However, Joy Global's improving backlog signals a possible bottoming process – Joy Global booked orders for a longwall system and parts for shovels operating in the growing Indian coal market and for two shovels to be used in the Canadian oil sands. As for the U.S. coal sector, restructuring and rationalization in supply will result in a more profitable industry with an ability and willingness to invest in highly productive equipment.



53.     Goldman Sachs did not prepare, as part of its fairness analyses, a public companies analysis.  Because Joy Global's industry is at the bottom of its cycle, a current snapshot of multiples is not necessarily meaningful.  In light of the cyclical nature of Joy Global's industry, a Discounted Cash Flow ("DCF") analysis is the best approach to imply a range of values for the Company's common stock.  Goldman Sachs's DCF analysis resulted in a value of $24 to $29 per share, but given that Joy Global common stock traded above $65 per share in 2014, its pre-deal announcement valuation in the low $20 range is at the bottom of the cycle.  Thus, the discount rates Goldman Sachs used (14% to 15%) in its DCF analysis, are far higher than a more appropriate range of 10.5% to 11.5%.  Using a discount rate of 10.5% to 11.5% results in an implied range of Joy Global per share values closer to $30 to $36.

54.     Furthermore, the consideration offered in the Proposed Acquisition does not adequately reflect the Company's prospects going forward or its synergistic value to Komatsu as a merger partner.  By entering into the Proposed Acquisition, Komatsu was able to capture the value of Joy Global's business, at far less than its actual synergistic value to Komatsu.  Joy Global's shareholders, on the other hand, will not share in these profits going forward, as this is a cash-out transaction that does not include any stock component for shareholders.

55.     The Proposed Acquisition allows Komatsu to reap benefits that will not be shared by Joy Global's shareholders and unfairly deprives Joy Global's shareholders of the same. As a result of the Proposed Acquisition, Joy Global's shareholders will be cashed out at a price that does not reflect their equity stake in the Company, all while Komatsu reaps the benefits of Joy Global's position as a global leader in its field.

56.     As Komatsu CEO Tetsuji Ohashi admitted to reporters, Komatsu took advantage of this cyclical industry slowdown and bought Joy Global at the bottom of the market: "'The mining market is near the bottom now. Now is the good time (to do the acquisition).'"

**Preclusive Deal Protection Devices**

57.     To make matters worse, the Board agreed to preclusive deal protection devices that make it nearly impossible for competing buyers to make a successful competing bid for the Company.  These provisions, which undermine shareholder value, include: (i) a no-shop clause that precludes the Company from communicating with or providing confidential Company information to potential competing bidders except under extremely limited circumstances; (ii) a matching rights provision that allows Komatsu to match any competing proposal; and (iii) a termination fee provision that requires Joy Global to pay Komatsu $75 million in the event the Proposed Acquisition is terminated in favor of a superior proposal.  The collective effect of these provisions has chilled any possibility of a topping bid.

58.     In light of all of the above, the Proposed Acquisition consideration substantially undervalues Joy Global and is merely an attempt by Komatsu to acquire Joy Global at a bargain price during a temporary cyclical downturn in the industry.  Indeed, Joy Global's stock traded as high as $65.36 per share on July 16, 2014, and the Company is sure to continue its recent upward momentum in the absence of the Proposed Acquisition.

**The Materially Misleading Proxy**

59.     In order to secure shareholder approval of this unfair deal, defendants filed the materially misleading Proxy.  The Proxy, which recommends that Joy Global's shareholders vote in favor of the Proposed Acquisition, omits and/or misrepresents material information about the unfair sale process, the unfair consideration, and the true intrinsic value of the Company.  Specifically, the

Proxy omits and/or misrepresents the material information set forth below in contravention of §§14(a) and 20(a) of the 1934 Act and/or defendants' duty of candor and full disclosure under state law.

60.     The Proxy contains numerous material misstatements and otherwise fails to disclose material information about the flawed sales process, including:

(a)     as of April 11, 2016, the strategic merits of combining with Komatsu that Joy Global recognized;

(b)     the bases for the Board's June 6, 2016 decision to deal exclusively with Komatsu concerning a sale of the Company; and

(c)     the details of the third-party consents and the exercise of appraisal rights that the Board discussed on June 30, 2016.

61.     As defendants are seeking shareholder approval of the Merger, defendants have a duty to disclose fully and fairly all material details of the sales process, including those set forth in the previous paragraph. Shareholders are entitled to know, before deciding whether to vote for or against the Proposed Acquisition, the details that led to the Board's decision to sell the Company for an unfair price.

62.     The Proxy also makes numerous material misstatements and otherwise fails to disclose material information about conflicts of interests that burdened the Board, Company management and their advisors, including the amount of compensation Goldman Sachs has received from Joy Global, as well as Komatsu, in relation to financial advisory and underwriting services provided in the past two years.

63.     In order for there to be an informed shareholder vote on the Merger, defendants are required to disclose even potential conflicts of interest. Here, the conflicts are more than potential, as Joy Global's Board, financial advisor and management are all conflicted. Shareholders are entitled to know if their fiduciaries have interests in the transaction that are even potentially in conflict with the shareholders' interest in maximized value. This information is material because shareholders must be told of all potential and actual conflicts of interests that bear on a director's ability to objectively assess merger transactions.

- 17 -

64.    Defendants made several materially misleading statements or otherwise failed to disclose material information in the Proxy about critical data and inputs underlying the financial analyses supporting the fairness opinion of the Board's financial advisor, Goldman Sachs, including:

(a)    with respect to a comparable companies analysis, whether Goldman Sachs considered or performed such analysis;

(b)    with respect to Goldman Sachs's *Discounted Cash Flow Analysis*:

(i)    the individual inputs and assumptions utilized by Goldman Sachs to derive the discount rate range of 14.0%-15.0%;

(ii)    the basis on which Goldman Sachs derived the terminal EBITDA multiple of 8x to 9x, given that it did not review public guideline companies and its selected transaction analysis utilized 11x to 17x EBITDA multiple; and

(iii)    how Goldman Sachs treated stock-based compensation expense (*i.e.*, as a cash or non-cash expense);

(c)    with respect to Goldman Sachs's *Selected Precedent Transactions Analysis*:

(i)    the individual EV/LTM EBITDA, EV/NTM revenue and EV/NTM EBITDA multiples for each of the selected transactions; and

(ii)    to what degree, if any, Goldman Sachs accounted in its analysis for the cyclical market conditions Joy Global is currently facing;

(d)    the financial projections by Joy Global management relied upon by Goldman Sachs for the purpose of its analysis, for fiscal years 2016-2021, for the following items:

(i)    EBIT (or D&A);

(ii)    Taxes (or tax rate);

(iii)    Capital expenditures;

(iv)    Changes in net working capital;

(v)    Stock-based compensation expense;

(vi)    Any other adjustments to unlevered free cash flow; and

(e)     The financial projections for the future performance of the business representing Joy Global's standalone plans under the second, more robust, scenario, as presented to and discussed by the Board on March 7 and June 6, 2016.

65.     There is no information more material to shareholders in a merger than the information underlying or supporting the purported "fair value" of their shares.  Shareholders are entitled to the information necessary to inform their decision as to the adequacy of the merger consideration, which includes the ***underlying data*** (including management's projections) that the investment bankers relied upon, the ***key assumptions*** that the financial advisors used in performing valuation analyses, and the range of values that resulted from those analyses.  Here, Goldman Sachs incorporated certain critical assumptions that significantly affected the output (valuation) of the analyses.  Without this material information, shareholders have no basis on which to judge the adequacy of Komatsu's offer.

66.     Without full and fair disclosure of the material information, set forth above, shareholders should not be asked to vote on the Proposed Acquisition.

67.     As explained above, this information is material to the impending decision of Joy Global shareholders on whether or not to vote in favor of the Proposed Acquisition.  As such, defendants' violations of §§14(a) and 20(a) of the 1934 Act and their breaches of fiduciary duties under state law to maximize shareholder value and disclose all material information in connection with a merger transaction threaten shareholders with irreparable harm for which money damages are inadequate.  Thus, plaintiff seeks injunctive relief to ensure that defendants cure their breaches of fiduciary duties and violations of §§14(a) and 20(a) of the 1934 Act before Joy Global shareholders are asked to vote on the Proposed Acquisition, and that defendants are not permitted to seek shareholder support of the Proposed Acquisition without complying with their duty under state law to maximize shareholder value and under the federal securities laws and state law to provide shareholders with all material information about the sales process, the potential and actual conflicts of interest, the merger consideration, and the Company's intrinsic value.

68.     In sum, by agreeing to the Proposed Acquisition, defendants have breached their fiduciary duties of loyalty, due care, independence, candor, good faith and fair dealing, and/or have

aided and abetted such breaches. Rather than acting in the best interests of the Company's shareholders, defendants spent substantial effort tailoring the structural terms of the Proposed Acquisition to aggrandize their own personal interests and to meet the specific needs of Komatsu, which efforts will eliminate the equity interest of Joy Global's public shareholders.

69.    In essence, the Proposed Acquisition is the product of a hopelessly flawed process that is designed to ensure the merger of Joy Global with Komatsu on terms preferential to Komatsu and defendants, and detrimental to plaintiff and Joy Global's shareholders.

70.    Plaintiff seeks to enjoin the Proposed Acquisition.

## CLASS ACTION ALLEGATIONS

71.    Plaintiff brings this action individually and as a class action on behalf of all holders of Joy Global stock who are being and will be harmed by defendants' actions described above (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendants.

72.    This action is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

73.    The Class is so numerous that joinder of all members is impracticable. According to the Merger Agreement, as of July 18, 2016, there were over 98 million shares of Joy Global common stock outstanding, held by hundreds, if not thousands, of beneficial holders.

74.    There are questions of law and fact that are common to the Class and that predominate over questions affecting any individual Class member. The common questions include, *inter alia*, the following:

(a)    whether the Individual Defendants have breached their fiduciary duties of undivided loyalty, independence or due care with respect to plaintiff and the other members of the Class in connection with the Proposed Acquisition;

(b)    whether defendants have engaged in self-dealing in connection with the Proposed Acquisition;

(c)     whether the Individual Defendants have breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of plaintiff and the other members of the Class in connection with the Proposed Acquisition;

(d)     whether defendants are unjustly enriching themselves and other insiders or affiliates of Joy Global;

(e)     whether the Individual Defendants have breached any of their other fiduciary duties owed to plaintiff and the other members of the Class in connection with the Proposed Acquisition, including the duties of good faith, diligence, honesty and fair dealing;

(f)     whether defendants, in bad faith and for improper motives, are impeding or erecting barriers to discourage other strategic alternatives, including offers from interested parties for the Company or its assets;

(g)     whether defendants have failed to disclose material information to shareholders in connection with the Proposed Acquisition;

(h)     whether the consideration payable in connection with the Proposed Acquisition to plaintiff and the Class is unfair and inadequate;

(i)     whether plaintiff and the other members of the Class will suffer irreparable injury if the transaction complained of herein is consummated; and

(j)     whether Joy Global, Komatsu Ltd., Parent and Merger Sub have aided and abetted the wrongful acts of the Individual Defendants.

75.     Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff does not have any interests adverse to the Class.

76.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class.

77.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class.

78.     Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

79.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## COUNT I

### Claim for Breach of Fiduciary Duties
### Against the Individual Defendants

80.     Plaintiff repeats and realleges each allegation set forth herein.

81.     The Individual Defendants have knowingly and recklessly and in bad faith violated fiduciary duties of care, loyalty, good faith, candor and independence owed to shareholders of Joy Global and have acted to put their personal interests and the interests of Komatsu ahead of the interests of Joy Global's shareholders.

82.     By the acts, transactions and courses of conduct alleged herein, the Individual Defendants, individually and acting as a part of a common plan, knowingly or recklessly and in bad faith, are acting to unfairly deprive plaintiff and other members of the Class of the ability to make informed and intelligent decisions regarding their investment in Joy Global.

83.     As demonstrated by the allegations above, the Individual Defendants have knowingly or recklessly failed to exercise the care required, and have breached their duties of loyalty, good faith and independence owed to shareholders of Joy Global because, among other reasons, they failed to provide all material information about the Proposed Acquisition to Joy Global's shareholders and to act in accordance with their fundamental duties of good faith, due care and loyalty.

84.     By reason of the foregoing acts, practices and course of conduct, defendants have violated their fiduciary obligations toward plaintiff and the other members of the Class.

85.     As a result of defendants' unlawful actions, plaintiff and the other members of the Class will be harmed.

## COUNT II

**Claim for Aiding and Abetting the Individual Defendants' Breaches of Fiduciary Duty Against Defendants Joy Global, Komatsu Ltd., Parent and Merger Sub**

86.    Plaintiff repeats and realleges each allegation set forth herein.

87.    Defendants Joy Global, Komatsu Ltd., Parent and Merger Sub are sued herein as aiders and abettors of the breaches of fiduciary duties outlined above by the Individual Defendants as members of the Board of Joy Global.

88.    The Individual Defendants breached their fiduciary duties of good faith, loyalty, and due care to Joy Global shareholders by failing to provide all material information about the Proposed Acquisition to Joy Global shareholders and act in accordance with their fundamental duties of good faith, due care and loyalty.

89.    Such breaches of fiduciary duty could not, and would not, have occurred but for the conduct of defendants Joy Global, Komatsu Ltd., Parent and Merger Sub, who, therefore, aided and abetted such breaches by entering into the Merger Agreement.

90.    Defendants Joy Global, Komatsu Ltd., Parent and Merger Sub had knowledge that they were aiding and abetting the Individual Defendants' breaches of their fiduciary duties to the Joy Global shareholders.

91.    Defendants Joy Global, Komatsu Ltd., Parent and Merger Sub rendered substantial assistance to the Individual Defendants in the breaches of their fiduciary duties to the Joy Global shareholders.

92.    As a result of the conduct of defendants Joy Global, Komatsu Ltd., Parent and Merger Sub in aiding and abetting the Individual Defendants' breaches of fiduciary duties, plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT III

**For Violations of §14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Joy Global**

93.    Plaintiff repeats and realleges each allegation set forth herein.

94.     The Individual Defendants and Joy Global disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

95.     The Proxy was prepared, reviewed and/or disseminated by the Individual Defendants and Joy Global. It misrepresents and/or omits material facts, including material information about the unfair sales process for the Company, the unfair consideration offered in the Proposed Acquisition, and the actual intrinsic value of the Company's assets.

96.     In disseminating the Proxy, the Individual Defendants and Joy Global made misleading statements of material fact and omitted to state material facts necessary to make the statements made not misleading in violation of §14(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder. By virtue of their positions within the Company or as signatories to the Merger Agreement, the Individual Defendants were aware of this information and of their duty to disclose this information in the Proxy.

97.     The Individual Defendants and Joy Global were at least negligent in filing the Proxy with these materially false and misleading statements.

98.     The omissions and false and misleading statements in the Proxy are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Acquisition. In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy and in other information reasonably available to shareholders.

99.     By reason of the foregoing, the Individual Defendants and Joy Global violated §14(a) of the 1934 Act and SEC Rule 14a-9(a) promulgated thereunder.

100.     Because of the false and misleading statements in the Proxy, plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT IV

### For Violation of §20(a) of the 1934 Act
### Against the Individual Defendants, Komatsu Ltd., Parent and Merger Sub

101.     Plaintiff repeats and realleges each allegation set forth herein.

102.    The Individual Defendants acted as controlling persons of Joy Global within the meaning of §20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Joy Global and their participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements plaintiff contends are false and misleading.

103.    Each of the Individual Defendants, Komatsu Ltd., Parent and Merger Sub was provided with or had unlimited access to copies of the Proxy and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

104.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy at issue contained the unanimous recommendation of each of the Individual Defendants to approve the Proposed Acquisition.  They were thus directly involved in the making of this document.

105.    Komatsu Ltd., Parent and Merger Sub also had direct supervisory control over the composition of the Proxy and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy.

106.    Section 6.01(a) of the Merger Agreement provides for the participation of defendants Parent and Merger Sub in the preparation, filing and distribution of the Proxy:

> Each of Parent and Merger Sub shall furnish all information concerning itself and its Affiliates to the Company, and provide such other assistance, as may be reasonably requested by the Company or the Company's outside legal counsel in connection with the preparation, filing and distribution of the Proxy Statement. ***Parent, Merger Sub and the Company shall cooperate and consult with each other in the preparation of the Proxy Statement***.

107.    The Proxy purports to describe the various issues and information that they reviewed and considered, descriptions that had input from both the directors and Komatsu Ltd.

108. By virtue of the foregoing, the Individual Defendants, Komatsu Ltd., Parent and Merger Sub violated §20(a) of the 1934 Act.

109. As set forth above, the Individual Defendants, Komatsu Ltd., Parent and Merger Sub had the ability to and did exercise control over a person or persons who violated §14(a) and SEC Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to §20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, Joy Global's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands relief in plaintiff's favor and in favor of the Class and against defendants as follows:

A. Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B. Declaring and decreeing that the Merger Agreement and the Proposed Acquisition were entered into in breach of the Individual Defendants' fiduciary duties and are therefore unlawful and unenforceable;

C. Enjoining defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Acquisition, unless and until they comply with their fiduciary duties of loyalty, good faith, care and candor and to maximize shareholder value and fully disclose all material information in their possession under state law, and their duties to provide shareholders with all material information about the unfair sales process for the Company, the conflicts of interest suffered by defendants in connection with the Proposed Acquisition, the unfair consideration offered in the Proposed Acquisition, and the actual intrinsic value of the Company under §§14(a) and 20(a) of the 1934 Act;

D. Directing the Individual Defendants to exercise their fiduciary duties to obtain a transaction that is in the best interests of Joy Global's shareholders and to refrain from entering into any transaction until the process for the sale or merger of the Company is complete and the highest possible value is obtained;

E.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof;

F.     Awarding plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

G.     Granting such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands trial by jury on all issues so triable.

DATED: September 13, 2016

WAGNER LAW GROUP, S.C.
K. SCOTT WAGNER (SBN 1004668)


s/K. Scott Wagner
K. SCOTT WAGNER

839 North Jefferson Street, Suite 400
Milwaukee, WI 53202
Telephone: 414/278-7000
414/278-7590 (fax)
ksw@wagner-lawgroup.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
DAVID T. WISSBROECKER
EDWARD M. GERGOSIAN
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

JOHNSON & WEAVER, LLP
FRANK J. JOHNSON
600 West Broadway, Suite 1540
San Diego, CA 92101
Telephone: 619/230-0063
619/255-1856 (fax)

JOHNSON & WEAVER, LLP
W. SCOTT HOLLEMAN
99 Madison Avenue, 5th Floor
New York, NY 10016
Telephone: 212/802-1486
212/602-1592 (fax)

Attorneys for Plaintiff