UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

STEVEN DUNCAN, et al., Individually and
on Behalf of All Others Similarly Situated,

                Plaintiffs,          Civil No. 2:16-cv-01229-PP

      vs.                              <u>CLASS ACTION</u>

JOY GLOBAL INC., et al.,

                Defendants.

---

## STIPULATION OF SETTLEMENT

---

1401419_4

This Stipulation of Settlement, dated May 22, 2018 (the "Stipulation"), is made and entered into by and among the following Settling Parties to the above-captioned litigation (the "Litigation"): (i) the Court-appointed Lead Plaintiffs Steven Duncan, Peter Cahill and Charles Caparelli ("Lead Plaintiffs"), by and through their counsel of record in the Litigation; and (ii) Joy Global Inc. ("Joy Global" or the "Company"), Edward L. Doheny II, Steven L. Gerard, Mark J. Gliebe, John T. Gremp, John Nils Hanson, Gale E. Klappa, Richard B. Loynd, P. Eric Siegert and James H. Tate (all defendants may be referred to collectively as the "Defendants"; the individuals may be referred to herein as the "Individual Defendants"), by and through their counsel of record in the Litigation. The Stipulation is intended by the Settling Parties to fully, finally, and forever resolve, discharge, relinquish, release, waive, dismiss with prejudice and settle the Released Claims, upon and subject to the terms and conditions hereof and subject to the approval of the United States District Court for the Eastern District of Wisconsin (the "Court").

## I.    THE LITIGATION

This is an action on behalf of a putative class of all Persons who purchased, sold, or held Joy Global common stock during the period from and including September 1, 2016, the record date for Joy Global's special stockholder meeting regarding the acquisition of Joy Global by Komatsu Ltd. ("Komatsu") and certain of its subsidiaries (the "Acquisition"), through and including April 5, 2017, the date the Acquisition closed. On July 21, 2016, Joy Global issued a press release announcing execution of the Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which Komatsu and certain of its subsidiaries would purchase all of Joy Global's outstanding shares for $28.30 per share. On August 15, 2016, Joy Global filed with the SEC a Preliminary Proxy Statement on Schedule 14A. On September 2, 2016, Joy Global filed with the SEC the Definitive Proxy Statement on Schedule 14A (the "Proxy").

- 1 -

Joy Global issued additional supplemental disclosures dated September 29, 2016 and October 3, 2016 (the "Supplements").

On September 13, 2016, Plaintiff Duncan filed the initial complaint in this matter (the "Initial Complaint"). The Initial Complaint alleged claims for breach of fiduciary duty and violations of §§14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") and SEC Rule 14a-9 promulgated thereunder. In addition to the Defendants identified herein, the Initial Complaint named as defendants Komatsu Ltd., Komatsu America Corp., and Pine Solutions, Inc. After negotiation, on October 26, 2016, the then-existing parties agreed to a stipulation requiring that, *inter alia*, an amended complaint, if any, would be filed not later than 30 days from the date of the appointment by the Court of lead plaintiff and lead counsel, which stipulation the Court signed on November 1, 2016 and November 9, 2016.

Also on September 13, 2016, Plaintiff Duncan's counsel issued a notice to investors informing them of the right to seek appointment as lead plaintiff by November 7, 2016.

Between August 24, 2016 and September 8, 2016, six other complaints were filed on behalf of Joy Global's shareholders purportedly arising out of the Acquisition (the "Related Actions").[1] On October 5, 2016, all plaintiffs in the Related Actions filed a "Stipulation and [Proposed] Order Concerning Plaintiffs' Voluntary Dismissal of the Above Actions," stating that plaintiffs Oduntan, Soffer, Gordon, Rote, Tansey and McGregor were dismissing their cases with prejudice as to them only. On October 7, 2016, the Court signed an Order dismissing the Related Actions with prejudice as to those named plaintiffs only.

---

[1] The Related Actions are: *Oduntan v. Joy Global Inc., et al.*, No. 16-cv-1136 (filed 8/24/16); *Soffer v. Doheny, et al.*, No. 16-cv-1148 (filed 8/26/16); *Gordon v. Joy Global Inc., et al.*, No. 16-cv-1153 (filed 8/26/16); *Rote v. Joy Global Inc., et al.*, No. 16-cv-1186 (filed 9/2/16); *Tansey v. Joy Global Inc., et al.*, No. 16-cv-1201 (filed 9/6/16); and *McGregor v. Joy Global Inc., et al.*, No. 16-cv-1213 (filed 9/8/16).

On November 7, 2016, Lead Plaintiffs filed motions seeking appointment as lead plaintiffs and their selected counsel as lead counsel in this action. More specifically, Plaintiff Cahill and Plaintiff Caparelli filed a motion seeking appointment as lead plaintiffs pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§78u-4(a)(3)(B), and seeking approval of their selection of Bronstein Gewirtz & Grossman, LLC as Lead Counsel and Bykhovsky Law LLC as Liaison Counsel. The same day, Plaintiff Duncan filed a motion seeking appointment as lead plaintiff and for an order appointing his selection of Robbins Geller Rudman & Dowd LLP as lead counsel. Plaintiffs Cahill, Caparelli and Duncan, through counsel, negotiated a resolution of the competing lead plaintiff and lead counsel motions. As a result of those arm's-length negotiations, on November 22, 2016, Duncan filed a Stipulation and [Proposed] Order Appointing Lead Plaintiff and Lead Counsel Pursuant to the PSLRA (the "Leadership Stipulation") stating, *inter alia*, that their "respective counsel, have agreed, subject to this Court's approval, that Messrs. Cahill, Caparelli and Duncan should be jointly appointed Lead Plaintiff and their counsel approved as Lead Counsel." Defendants took "no position on the pending motions and reserv[ed] all rights to challenge the Rule 23 requirements at the class certification stage." On November 28, 2016, the Court approved the Leadership Stipulation and ordered: "Pursuant to 15 U.S.C. §78u-4(a)(3)(B), the court APPOINTS Peter Cahill, Charles Caparelli and Steven Duncan as Lead Plaintiffs"; "Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), the court APPROVES the Lead Plaintiffs' selection of Robbins Geller Rudman & Dowd LLP and Bronstein Gewirtz & Grossman LLC, and APPOINTS those firms as Lead Counsel for the Lead Plaintiffs; and APPROVES the Lead Plaintiffs' selection of Wagner Law Group, S.C. as Local Counsel, and APPOINTS that firm as Local Counsel for the Lead Plaintiffs."

On December 27, 2016, Lead Plaintiffs and the then-existing defendants entered into a stipulation stating, *inter alia*, that "the Parties agree that the efficient prosecution of this case and administration of justice favors extending the time for lead plaintiffs to amend the complaint and for

1401419_4

the Defendants to respond to the amended complaint until after the transaction closes" and that "Lead Plaintiffs shall file an amended complaint not later than 21 days from the date on which the transaction closes." The Court approved that stipulation, which also contained a briefing schedule for any subsequent motions to dismiss, on December 27, 2016.

Twenty-one days after the close of the Acquisition, on April 26, 2017, Lead Plaintiffs filed an Amended Complaint for Violations of §§14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Amended Complaint"). The Amended Complaint dropped the claims for breach of fiduciary duty and dropped Komatsu Ltd., Komatsu America Corp., and Pine Solutions Inc. as defendants. As noted, however, the Amended Complaint continued to allege claims on behalf of Joy Global stockholders for violations of §§14(a) and 20(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder.

Defendants filed an omnibus Motion to Dismiss on June 26, 2017 (the "Motion to Dismiss"). In the Motion to Dismiss, Defendants argued that under Fed. R. Civ. P. 12(b)(6), the Amended Complaint failed to state a claim upon which relief could be granted and should be dismissed with prejudice. On August 10, 2017, Lead Plaintiffs filed a Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Class Action Complaint. On September 11, 2017, Defendants filed a Reply Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Class Action Complaint. While the Motion to Dismiss remained pending, the parties filed the following notices, responses, and motions to consider additional authority:

- October 6, 2017: Lead Plaintiffs filed a Notice of Recent Authority calling the Court's attention to a recent "Findings and Recommendations" issued by the Honorable Magistrate Judge Youlee Yim You of the United States District Court for the District of Oregon in *NECA-IBEW Pension Trust Fund v. Precision Castparts Corp.*, No. 3:16-cv-01756-YY (Dist. Or. Oct. 3, 2017) ("*Precision Castparts*").

- October 13, 2017: Defendants responded to Lead Plaintiffs' Notice regarding *Precision Castparts*.

1401419_4

- January 30, 2018: Lead Plaintiffs filed a Supplemental Notice of Recent Authority regarding the district court's adoption of the *Precision Castparts* Findings and Recommendations.

- February 2, 2018: Defendants moved the Court, under Civil Local Rules 7(h) and 7(i), for an order permitting them to file supplemental authority concerning: *City of Hialeah Employees' Retirement Sys. v. FEI Co.*, Case No. 3:16-cv-1792-SI (D. Or. Jan. 25, 2018) ("*FEI*").

- February 9, 2018: Lead Plaintiffs responded to Defendants' motion regarding *FEI*.

In December 2017, the parties' counsel began discussing the potential for resolution of this matter. Arm's-length negotiations took place over the next approximately three months and on March 23, 2018, Defendants filed a "Notice of Settlement" with the Court stating that "the parties have reached a settlement in principle that would resolve all outstanding issues in this case among all parties."

## II.    DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

This Stipulation constitutes a compromise of matters that are in dispute between the parties. Each of the Defendants have denied and continue to deny any wrongdoing by or liability against them arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Litigation. Defendants expressly deny that Lead Plaintiffs have asserted any valid claims as to any of them, and expressly deny any and all allegations of fault, liability, wrongdoing, or damages whatsoever and maintain that their conduct was at all times proper and in compliance with all applicable provisions of law. In addition, Defendants maintain that they have meritorious defenses to all claims alleged in the Litigation.

This Stipulation shall in no event be construed or deemed to be evidence of an admission or concession on the part of any Defendant, or any Released Persons (defined below), with respect to any claim or of any fault, liability, wrongdoing, negligence, omission, or damage whatsoever, or any infirmity in the defenses that Defendants have asserted. Defendants' decision to settle the Litigation is based on the conclusion that further conduct of the Litigation could be protracted and expensive,

that it is desirable that the Litigation be fully and finally settled and that it would be beneficial to avoid the uncertainty and risks inherent in any litigation.

## III.    CLAIMS OF LEAD PLAINTIFFS AND BENEFITS OF SETTLEMENT

Lead Plaintiffs and Lead Counsel believe that the claims asserted in the Litigation have merit and that the evidence developed to date supports those claims. Lead Plaintiffs and Lead Counsel, however, recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Litigation against Defendants through trial, potential post-trial proceedings sought by Defendants, and appeals. Lead Plaintiffs and Lead Counsel also have taken into account the uncertain outcome and the risk of any litigation, as well as the difficulties and delays inherent in any litigation. Lead Plaintiffs and Lead Counsel also are mindful of the inherent problems of proof and possible defenses to the violations asserted in the Litigation. Lead Plaintiffs and Lead Counsel believe that the Settlement set forth in this Stipulation confers substantial benefits upon the Class. Based on their evaluation, Lead Plaintiffs and Lead Counsel have determined that the Settlement set forth in this Stipulation is in the best interests of the Class, and that the Settlement provided for herein is fair, reasonable and adequate.

## IV.    TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Lead Plaintiffs (for themselves and on behalf of the Class Members (as defined below)) and the Defendants, by and through their respective counsel of record, that, subject to the approval of the Court, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and the PSLRA, the Litigation and the Released Claims shall be finally, fully and forever resolved, discharged, relinquished, released, waived, settled, and dismissed with prejudice, upon and subject to the terms and conditions of the Stipulation, as follows:

1.      **Definitions**

As used in the Stipulation the following terms have the meanings specified below:

1.1      "Authorized Claimant" means any Class Member whose claim for recovery has been allowed pursuant to the terms of the Plan of Allocation ultimately approved by the Court.

1.2      "Claim Form" or "Proof of Claim Form" or "Proof of Claim and Release" means the form, substantially in the form attached hereto as Exhibit A-2.

1.3      "Claimant" means a person or entity who or which submits a Claim Form to the Claims Administrator.

1.4      "Claims Administrator" means the firm of Gilardi & Co. LLC.

1.5      "Class" means: all Persons who purchased, sold or held Joy Global common stock during the period from and including September 1, 2016, the record date for Joy Global's special stockholder meeting regarding the acquisition of Joy Global by Komatsu and certain of its subsidiaries, through and including April 5, 2017, the date the Acquisition closed. Excluded from the Class are (i) Defendants; (ii) members of the immediate families of each Defendant; (iii) Joy Global's subsidiaries and affiliates; (iv) any entity in which any Defendant has a controlling interest; and (v) the legal representatives, heirs, successors, administrators, executors, and assigns of each defendant. Also excluded from the Class are those Persons who properly exclude themselves by timely and validly requesting exclusion from the Class pursuant to the Notice of Pendency and Proposed Settlement of Class Action to be sent to Class Members pursuant to the Preliminary Approval Order.

1.6      "Class Member" or "Member of the Class" means any Person who falls within the definition of the Class as set forth in ¶1.5 of the Stipulation.

1.7      "Class Period" means the period commencing on September 1, 2016 and ending on April 5, 2017, inclusive.

1.8    "Corporate Defendant" means Joy Global.

1.9    "Court" means the United States District Court for the Eastern District of Wisconsin.

1.10    "Defendants" means Joy Global, Edward L. Doheny II, Steven L. Gerard, Mark J. Gliebe, John T. Gremp, John Nils Hanson, Gale E. Klappa, Richard B. Loynd, P. Eric Siegert and James H. Tate.

1.11    "Defendants' Counsel" means the undersigned counsel for Defendants.

1.12    "Defendants' Insurance Claims" means any or all of Defendants' claims and rights existing at any point in time, whether known or unknown, to seek insurance coverage or any other relief or finding of liability from any insurer in connection with or related to this Settlement or the subject matter of the Litigation or the Related Actions.

1.13    "Effective Date" means the first date by which all of the events and conditions specified in ¶7.1 of the Stipulation have been met and have occurred.

1.14    "Escrow Account" means the account described in ¶2.1 through ¶2.4 hereof.

1.15    "Escrow Agent" means Robbins Geller Rudman & Dowd LLP or its successor(s).

1.16    "Final" means when the last of the following with respect to the Order and Final Judgment, substantially in the form of Exhibit B attached hereto, shall occur: (i) the expiration of three (3) business days after the time for the filing of any motion to alter or amend the Order and Final Judgment under Federal Rule of Civil Procedure 59(e) without any such motion having been filed; (ii) the expiration of the time for the filing or noticing of any appeal from the Order and Final Judgment without any appeal having been filed; and (iii) if such motion to alter or amend is filed or if an appeal is filed or noticed, then immediately after the determination of that motion or appeal so that the Order and Final Judgment is no longer subject to any further judicial review or appeal whatsoever, whether by reason of affirmance by court of last resort, lapse of time, voluntary dismissal of the appeal or otherwise.  For purposes of this paragraph, an appeal shall include any

- 8 -

petition for a writ of certiorari or other writ that may be filed in connection with the approval or disapproval of this Settlement, but shall not include any appeal that concerns only the issue of attorneys' fees and expenses, payment of Lead Plaintiffs' time and expenses or the Plan of Allocation of the Settlement Fund. Any proceeding or order, or any appeal or petition for a writ of certiorari pertaining solely to any plan of distribution and/or application for attorneys' fees, costs, or expenses and/or Lead Plaintiffs' request for payment of time and expenses, shall not in any way delay or preclude the Order and Final Judgment from becoming Final.

1.17    "Final Approval Hearing" means the hearing to determine whether the proposed Settlement embodied by this Stipulation is fair, reasonable, and adequate to the Class, and whether the Court should: (1) enter the Order and Final Judgment approving the proposed Settlement; (2) approve the Plan of Allocation of settlement proceeds; and (3) assess Lead Counsel's petition for attorneys' fees and expenses to Lead Plaintiffs' counsel and Lead Plaintiffs' request for payment of time and expenses.

1.18    "Individual Defendants" means Edward L. Doheny II, Steven L. Gerard, Mark J. Gliebe, John T. Gremp, John Nils Hanson, Gale E. Klappa, Richard B. Loynd, P. Eric Siegert and James H. Tate.

1.19    "Joy Global" or the "Company" means Joy Global Inc.

1.20    "Lead Counsel" means Robbins Geller Rudman & Dowd LLP and Bronstein, Gewirtz & Grossman, LLC.

1.21    "Lead Plaintiffs" means Steven Duncan, Peter Cahill and Charles Caparelli.

1.22    "Liaison Counsel" means Kerkman Wagner & Dunn or its successor(s).

1.23    "Litigation" means the above-captioned action, *Duncan, et al. v. Joy Global Inc., et al.*, Civil No. 2:16-cv-01229-PP in the United States District Court for the Eastern District of Wisconsin, Milwaukee Division.

1401419_4

1.24 "Notice" means the Notice of Pendency and Proposed Settlement of Class Action defined in ¶3.1 hereof.

1.25 "Notice and Administration Costs" means the costs defined in ¶2.8 hereof.

1.26 "Order and Final Judgment" means the judgment to be rendered by the Court, in the form attached hereto as Exhibit B.

1.27 "Person" means a natural person, individual, corporation, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership, limited liability company, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and all of their respective spouses, heirs, beneficiaries, executors, administrators, predecessors, successors, representatives, or assignees.

1.28 "Plaintiffs' Counsel" means any counsel who have appeared for Lead Plaintiffs in the Litigation, specifically: Robbins Geller Rudman & Dowd LLP; Bronstein, Gewirtz & Grossman, LLC; Kerkman Wagner & Dunn; Johnson Fistel, LLP; and Bykhovsky Law LLC; or their successors. No other law firm is included within the definition of Plaintiffs' Counsel.

1.29 "Plan of Allocation" means a plan or formula of allocation of the Settlement Fund whereby the Settlement Fund shall be distributed to Authorized Claimants after payment of expenses of notice and administration of the Settlement, Taxes and Tax Expenses, and such attorneys' fees, costs, expenses (including time and expenses awarded by the Court to Lead Plaintiffs), and interest as may be awarded by the Court. Any Plan of Allocation, as well as Exhibit A-2 hereto, is not part of the Stipulation, and Defendants and their Related Parties shall have no responsibility or liability with respect thereto.

1.30 "Preliminary Approval Order" means the order described in ¶3.1 hereof, substantially in the form attached hereto as Exhibit A.

1.31    "Related Parties" means, with respect to each Defendant, any and all of their related parties, including, without limitation, any and all of their past or present parents (direct or indirect), subsidiaries (direct or indirect), affiliates, predecessors, or successors, as well as any and all of its or their current or former officers, directors, employees, associates, members of their immediate families, agents or other persons acting on their behalf, investment banks, including, but not limited to, Goldman Sachs Group, Inc., attorneys, advisors, financial advisors, publicists, independent certified public accountants, auditors, accountants, assigns, creditors, administrators, heirs, estates, or legal representatives.  "Related Parties" also means any insurers of Defendants, but solely in the context of, and in respect to, any Released Claims that could be asserted directly against such insurers by Lead Plaintiffs.

1.32    "Released Claims" means any and all claims that have been asserted, could have been asserted, or could be asserted in the future in this Litigation; and any and all claims, actions, potential actions, demands, losses, rights, causes of action, controversies, costs, damages, liabilities, obligations, judgments, suits, matters and issues of any nature for any remedy, known or unknown, suspected or unsuspected, accrued or unaccrued, whether class, individual, or otherwise, arising under the laws, regulations, or common law of the United States of America, any state or political subdivision thereof, or any foreign country or jurisdiction, in law, in contract, or in equity, and regardless of legal theory, and including claims for indemnification, contribution, or otherwise denominated, that have been asserted, could have been asserted, or could be asserted in the future, by Lead Plaintiffs or any Class Member in his, her or its capacity as a purchaser, seller or holder of Joy Global stock, that have arisen from, could have arisen, or relate in any manner to, in whole or in part, the allegations, conduct, facts, events, transactions, acts, occurrences, statements, representations, omissions or any other matter related to, or arising out of, the Acquisition, the Proxy and the Supplements thereto, the projections and investor presentations referenced in the Amended

- 11 -

Complaint, or to the purchase, sale, or holding of Joy Global's common stock in the period from and including September 1, 2016 through and including April 5, 2017. "Released Claims" includes "Unknown Claims" as defined in ¶1.42 hereof. Notwithstanding any other provision to the contrary herein, Released Claims shall not include Defendants' Insurance Claims. For the avoidance of doubt, nothing in this Stipulation is intended to, nor shall it be deemed to, release any claim that the Defendants have against any of Defendants' insurers.

1.33    "Released Persons" means each and all of the Defendants and each and all of their Related Parties.

1.34    "Settled Defendants' Released Claims" means any and all claims, actions, potential actions, demands, losses, rights, causes of action, controversies, costs, damages, liabilities, obligations, judgments, suits, matters and issues of any nature for any remedy, known or unknown, suspected or unsuspected, accrued or unaccrued, whether class, individual, or otherwise, arising under the laws, regulations, or common law of the United States of America, any state or political subdivision thereof, or any foreign country or jurisdiction, in law, in contract, or in equity, and regardless of legal theory, and including claims for indemnification, contribution, or otherwise denominated, that have been asserted, could have been asserted, or could be asserted in the future by the Released Persons or any of them against Lead Plaintiffs, Class Members, or Plaintiffs' Counsel, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against the Released Persons, except for claims related to the enforcement of the Settlement. In all events, Lead Plaintiffs, Plaintiffs' Counsel, and all Class Members shall have no liability or responsibility for Defendants' Insurance Claims.

1.35    "Settlement" means the settlement of the Litigation as set forth in this Stipulation.

1.36    "Settlement Amount" means the principal amount of Twenty Million Dollars ($20,000,000.00), to be paid by the Company pursuant to ¶2.1 and ¶2.2 of this Stipulation. Neither

- 12 -

Defendants nor their Related Parties shall have any obligation whatsoever to pay any amount over and above the principal amount of Twenty Million Dollars ($20,000,000.00). Such amount is to be paid as consideration for full and complete settlement of all the Released Claims.

1.37   "Settlement Fund" means the Settlement Amount plus all interest and accretions thereto after being transferred to an account controlled by the Escrow Agent, and which may be reduced by payments or deductions as provided for herein or by court order.

1.38   "Settling Parties" means, collectively, each of the Defendants and Lead Plaintiffs on behalf of themselves and each of the Class Members.

1.39   "Stipulation" means this Stipulation of Settlement, including the recitals and Exhibits thereto.

1.40   "Taxes" means all taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund as described in ¶2.9.

1.41   "Tax Expenses" means expenses and costs incurred in connection with the calculation and payment of taxes or the preparation of tax returns and related documents, including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs relating to filing (or failing to file) the returns described in ¶2.9.

1.42   "Unknown Claims" means (i) any of the Released Claims which Lead Plaintiffs or any Class Member, or any of their agents or attorneys, does not know or suspect to exist in such Person's favor at the time of the release of the Released Claims, and (ii) any of the Settled Defendants' Released Claims that the Released Persons do not know or suspect to exist in his, her or its favor at the time of the release of the Settled Defendants' Released Claims, which, in the case of both (i) and (ii), if known by such Person, might have affected such Person's decision with respect to this Settlement, including, without limitation, such Person's decision not to object to this Settlement or not to exclude himself, herself or itself from the Class. Unknown Claims include those Released

- 13 -

Claims in which some or all of the facts comprising the claim may be suspected, or even undisclosed or hidden. With respect to any and all Released Claims and the Settled Defendants' Released Claims, upon the Effective Date, Lead Plaintiffs and Defendants shall expressly, and each of the Class Members and Released Persons shall be deemed to have, and by operation of the Order and Final Judgment shall have, expressly waived to the fullest extent permitted by law, the provisions, rights, and benefits of California Civil Code §1542, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor**.

Lead Plaintiffs and Defendants shall expressly, and each of the Class Members and Released Persons shall be deemed to have, and by operation of the Order and Final Judgment, shall have expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code §1542. Lead Plaintiffs, Class Members and the Released Persons may hereafter discover facts in addition to or different from those which such party now knows or believes to be true with respect to the subject matter of the Released Claims and the Settled Defendants' Released Claims, but Lead Plaintiffs and Defendants shall expressly, and each Class Member and Released Persons, upon the Effective Date, shall be deemed to have, and by operation of the Order and Final Judgment shall have fully, finally, and forever settled and released any and all Released Claims, or the Settled Defendants' Released Claims, as the case may be, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts, whether or not previously

1401419_4

or currently asserted in any action. Lead Plaintiffs and Defendants acknowledge, and the Class Members and Released Persons shall be deemed by operation of the Order and Final Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement of which this release is a part.

## 2. The Settlement

### a. The Settlement Fund

2.1     In consideration of the terms of this Stipulation, Joy Global shall pay or cause to be paid the Settlement Amount into the Escrow Account, no later than fourteen (14) days after the later of: (i) entry of the Preliminary Approval Order, as defined in ¶3.1 herein; and (ii) the provision to counsel for Defendants of payment instructions and a W-9 form providing the tax identification number for the Escrow Agent. The Escrow Agent shall deposit the Settlement Amount, plus any accrued interest, in a segregated escrow account maintained by the Escrow Agent.

2.2     The deposit of the Settlement Amount is the only payment to be made by or on behalf of Defendants in connection with this Settlement. The Individual Defendants do not have and should not be suggested to have any payment liability. As set forth below, all fees, costs, and expenses incurred by or on behalf of Lead Plaintiffs and the Class associated with the Settlement, including, but not limited to, Taxes, Tax Expenses, administrative costs and costs of providing notice of the Settlement to the Class Members, any award of attorneys' fees and expenses of Plaintiffs' Counsel, and any award to Lead Plaintiffs made by the Court pursuant to the PSLRA for reasonable costs and expenses, shall be paid from the Settlement Fund, and in no event shall Defendants or their Related Parties bear any responsibility for any such fees, costs or expenses.

2.3     The payment of the Settlement Amount shall be made by Joy Global only. Joy Global's obligation to pay the Settlement Amount shall not be conditional upon any payment from or on behalf of any of Joy Global's insurers.

1401419_4

### b. The Escrow Agent

2.4    The Escrow Agent will invest the Settlement Fund created pursuant to ¶2.1 hereof only in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, and will reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. All costs and risks related to the investment of the Settlement Fund in accordance with the guidelines set forth in this paragraph shall be borne by the Settlement Fund and neither Defendants nor their Related Parties shall have any responsibility for, interest in, or liability whatsoever with respect to the funds held in the Escrow Account, including with respect to investment decisions, distribution of the Settlement Fund, or the actions of the Escrow Agent, or any transactions executed by the Escrow Agent.

2.5    The Escrow Agent shall not disburse the Settlement Fund except as provided by: (i) the Stipulation; (ii) an order of the Court; or (iii) prior written agreement of counsel for Defendants.

2.6    Subject to further order(s) and/or directions as may be made by the Court, or as provided in the Stipulation, the Escrow Agent is authorized to execute such transactions on behalf of the Class Members as are consistent with the terms of the Stipulation. The Released Persons shall have no responsibility for, interest in, or liability whatsoever with respect to, the actions of the Escrow Agent, or any transaction executed by the Escrow Agent.

2.7    All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed or returned pursuant to the Stipulation and/or further order(s) of the Court.

2.8    The Escrow Agent may pay from the Settlement Fund the costs and expenses reasonably and actually incurred in connection with providing notice to Members of the Class, mailing the Notice and Proof of Claim and Release and publishing notice (such amount shall

include, without limitation, the actual costs of publication, printing and mailing the Notice, and reimbursement to nominee owners for forwarding notice to their beneficial owners), soliciting Class claims, assisting with the filing of claims, administering and distributing the Net Settlement Fund to Authorized Claimants, processing Proofs of Claim and Releases, and paying escrow fees and costs, if any, and the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice and processing the submitted claims ("Notice and Administration Costs"). In the event that the Settlement does not become final, any money paid or incurred for the above purposes, including any related fees, shall not be returned or repaid to Joy Global or its insurers.

### c. Taxes

2.9 (a) The Settling Parties and the Escrow Agent agree that the Settlement Fund is intended to be and should be treated as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1. In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶2.9, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1(j)(2)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such Treasury regulations promulgated under §1.468B of the Internal Revenue Code of 1986, as amended (the "Code"). It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b) For the purpose of §1.468B of the Code and the Treasury regulations promulgated thereunder, the Escrow Agent shall be designated as the "administrator" of the Settlement Fund. The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the

returns described in Treas. Reg. §1.468B-2(k)). Such returns (as well as the election described in ¶2.9(a) hereof) shall be consistent with this ¶2.9 and in all events shall reflect that all Taxes as defined in ¶1.40 hereof (including any estimated Taxes, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶2.9(c) hereof.

(c) All: (a) Taxes (including any estimated Taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon Defendants or their Related Parties with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes; and (b) Tax Expenses, and costs incurred in connection with the operation and implementation of this ¶2.9 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this ¶2.9), shall be paid out of the Settlement Fund. In no event shall Defendants or their Related Parties have any responsibility for or liability with respect to the Taxes or the Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court, and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amount, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(1)(2)); neither Defendants nor their Related Parties are responsible therefor nor shall they have any liability with respect thereto and shall have no responsibility or liability for the acts or omissions of Lead Counsel or their agents with respect to the payment of Taxes, as described herein. The Settling Parties hereto agree to cooperate with the

Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶2.9.

(d)     Neither Defendants nor their Related Parties are responsible for Taxes, Tax Expenses, or Notice and Administration Costs, nor shall they be liable for any claims with respect thereto.

### d.     Termination of Settlement

2.10     In the event that the Stipulation is not approved, or is terminated pursuant to ¶7.3 or ¶7.4, or is canceled, or fails to become effective for any reason, including, without limitation, in the event the Order and Final Judgment is reversed or vacated following any appeal taken therefrom, or is successfully collaterally attacked, the Settlement Fund (including accrued interest and income), less Notice and Administration Costs, Taxes or Tax Expenses paid in connection with the Settlement provided for herein, incurred or due and owing, shall be refunded in accordance with the instructions to be provided by counsel for Defendants no later than ten (10) business days from the termination event or as otherwise agreed upon in writing by counsel for Defendants.

### 3.     Preliminary Approval Order and Final Approval Hearing

3.1     Promptly after execution of the Stipulation, Lead Plaintiffs shall submit the Stipulation together with its Exhibits to the Court and Lead Counsel shall apply for entry of an order, substantially in the form and content of Exhibit A attached hereto (the "Preliminary Approval Order"), requesting, *inter alia*, the preliminary approval of the Settlement set forth in the Stipulation, approval for the mailing of the Notice of Pendency and Proposed Settlement of Class Action (the "Notice") and the Proof of Claim and Release, substantially in the forms of Exhibits A-1 and A-2 attached hereto, and approval of the publication of a Summary Notice, substantially in the form of Exhibit A-3 attached hereto, or such other substantially similar form agreed to by the Settling Parties.

- 19 -

3.2     Lead Plaintiffs will request that the Court hold the Final Approval Hearing and finally approve the Settlement of the Litigation as set forth herein.  At or after the Final Approval Hearing, Lead Counsel also will request that the Court approve the proposed Plan of Allocation and the Fee and Expense Application.

**4.      Releases**

4.1     Upon the Effective Date, as defined in ¶1.13 hereof, Lead Plaintiffs, and each and all of the Class Members and anyone claiming through or on behalf of any of them, including, but not limited to, their predecessors, successors, agents, representatives, attorneys, affiliates, heirs, executors, administrators, and assigns, shall be deemed to have, and by operation of the Order and Final Judgment shall have, fully, finally, and forever resolved, discharged, relinquished, released, waived, settled, and dismissed with prejudice any and all Released Claims (including, without limitation, Unknown Claims), as well as any and all claims arising out of, relating to, or in connection with, the defense, settlement, or resolution of the Litigation or the Released Claims, against each and all of the Released Persons, regardless of whether a Class Member executes and delivers a Proof of Claim and Release, except that claims relating to the enforcement of the Settlement shall not be released.

4.2     Upon the Effective Date, as defined in ¶1.13 hereof, without further action by anyone, Lead Plaintiffs, each and all of the Class Members and anyone claiming through or on behalf of any of them, including, but not limited to, their predecessors, successors, agents, representatives, attorneys, affiliates, heirs, executors, administrators, and assigns, are and shall be forever barred and enjoined from commencing, instituting, asserting, maintaining, enforcing, aiding, prosecuting, or continuing to prosecute any action or proceeding in any forum (including, but not limited to, any state or federal court of law or equity, any arbitral forum, any tribunal, administrative forum, or the court of any foreign jurisdiction, or any other forum of any kind), any and all of the Released Claims

- 20 -

(including, without limitation, Unknown Claims), as well as any and all claims arising out of, relating to, or in connection with, the defense, settlement or resolution of the Litigation or the Released Claims, against each and all of the Released Persons, regardless of whether such Class Member executes and delivers a Proof of Claim and Release, except that claims relating to the enforcement of the Settlement shall not be released.

4.3    Upon the Effective Date, Lead Plaintiffs and each and every Class Member, for themselves and for any Person claiming now or in the future through or on behalf of them, shall covenant or be deemed to have covenanted not to sue any Released Persons with respect to any and all Released Claims, except to enforce the terms and conditions contained in this Stipulation or the Order and Final Judgment.

4.4    The Proof of Claim and Release to be executed by Class Members shall release any and all Released Claims against each and all of the Released Persons and shall be substantially in the form contained in Exhibit A-2 attached hereto.

4.5    Upon the Effective Date, as defined in ¶1.13 hereof, without further action by anyone, each and all of the Released Persons shall be deemed to have, and by operation of the Order and Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged Lead Plaintiffs, each and all of the Class Members, and Plaintiffs' Counsel from all Settled Defendants' Released Claims, and shall forever be enjoined from prosecuting such claims, except for claims relating to the enforcement of the Settlement.

4.6    In accordance with the PSLRA as codified at 15 U.S.C. §78u-4(f)(7)(A), (a) all obligations to any Class Member of any Released Person arising out of the Litigation are discharged, and (b) any and all claims for contribution arising out of the Litigation or any of the Released Claims (i) by any person or entity against any of the Released Persons, and (ii) by any of the Released

Persons against any person or entity, other than as set out in 15 U.S.C. §78u-4(f)(7)(A)(ii), are hereby permanently barred, extinguished, discharged, satisfied and unenforceable.

4.7     For the avoidance of doubt, nothing in this Stipulation is intended to, nor shall it be deemed to, release any claim that the Defendants have against any of Defendants' insurers.

**5.      Administration and Calculation of Claims, Final Awards, and Supervision and Distribution of Settlement Fund**

5.1     The Claims Administrator, subject to such supervision and direction of the Court and/or Lead Counsel as may be necessary or as circumstances may require, shall administer and calculate the claims submitted by Class Members and shall oversee distribution of the Net Settlement Fund (defined below) to Authorized Claimants.  Except for the Company's obligation to pay or cause payment of the Settlement Amount as set forth herein, Defendants and their Related Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the investment or distribution of the Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection therewith.

5.2     The Settlement Fund shall be applied as follows:

(a)      to pay all Notice and Administration Costs;

(b)      to pay the Taxes and Tax Expenses;

(c)      to pay Plaintiffs' Counsel's attorneys' fees and expenses with interest thereon (the "Fee and Expense Award"), if and to the extent awarded by the Court, and Lead Plaintiffs' time and expenses pursuant to 15 U.S.C. §78u-4(a)(4), if and to the extent awarded by the Court; and

(d)      after the Effective Date, to distribute the balance of the Settlement Fund (the "Net Settlement Fund") to Authorized Claimants as allowed by the Stipulation, the Plan of Allocation, or the Court.

- 22 -

5.3     Upon the Effective Date and thereafter, and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following:

(a)     Each Class Member shall be required to submit a Proof of Claim and Release, substantially in a form approved by the Court, supported by such documents as are designated therein, including proof of the transactions claimed, or such other documents or proof as the Claims Administrator, in its discretion, may deem acceptable;

(b)     All Proofs of Claim and Releases must be submitted by the date specified in the Notice unless such period is extended by Court order. Any Class Member who fails to submit a Proof of Claim and Release by such date, or timely submits a Proof of Claim and Release that is ultimately and finally disallowed or rejected by the Claims Administrator, shall be forever barred from receiving any payment pursuant to this Stipulation, but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Order and Final Judgment to be entered in the Litigation and the releases provided for herein, and will be barred from bringing any action against the Released Persons concerning the Released Claims. A Proof of Claim and Release shall be deemed to have been submitted when posted, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon. In all other cases, the Proof of Claim and Release shall be deemed to have been submitted when actually received by the Claims Administrator. Notwithstanding the foregoing, Lead Counsel shall have the discretion (but not the obligation) to accept for processing late-submitted claims so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby. No Person shall have any claim against Lead Plaintiffs, Lead

1401419_4

Counsel or the Claims Administrator by reason of the decision to exercise or not exercise such discretion;

(c)     Each Proof of Claim and Release shall be submitted to and reviewed by the Claims Administrator, who shall determine in accordance with this Stipulation and the approved Plan of Allocation the extent, if any, to which each claim shall be allowed, subject to review by the Court pursuant to subparagraph (e) below;

(d)     Proofs of Claim and Releases that do not meet the submission requirements may be rejected;

(e)     Prior to rejection of a Proof of Claim and Release, the Claims Administrator shall communicate with the Claimant in order to attempt to remedy the curable deficiencies.  The Claims Administrator shall notify, in a timely fashion and in writing, all Claimants whose Proofs of Claim and Releases it proposes to reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the Claimant whose claim is to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of subparagraph (f) below;

(f)     If any Claimant whose claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within twenty (20) days after the date of mailing of the notice required in subparagraph (e) above, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection, along with any supporting documentation, and requesting a review thereof by the Court.  If a dispute concerning a claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court;

(g)     Each Claimant who submits a Proof of Claim and Release shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's claim, including, but

not limited to, all releases provided for herein and in the Order and Final Judgment, and the claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to the Claimant's status as a Class Member and the validity and amount of the Claimant's claim. In connection with processing the Proofs of Claim and Releases, no discovery shall be allowed on the merits of the Litigation or the Settlement; and

(h)     The Claims Administrator shall calculate the claims of Authorized Claimants in accordance with the Plan of Allocation. Following the Effective Date, the Claims Administrator shall send to each Authorized Claimant his, her or its pro rata share of the Net Settlement Fund. No distributions will be made to Authorized Claimants who would otherwise receive a distribution of less than $10.00.

5.4     Except for the Company's obligation to pay or cause payment of the Settlement Amount as set forth herein, Defendants and their Related Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the investment or distribution of the Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection therewith.

5.5     No Person shall have any claim of any kind against the Defendants, their Related Parties, or counsel for Defendants with respect to the matters set forth in this Section 5.

5.6     No Person shall have any claim against Lead Plaintiffs, the Escrow Agent, Plaintiffs' Counsel, Defendants or any Released Persons or their counsel, or any claims administrator based on distributions made substantially in accordance with this Stipulation and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court.

5.7     Defendants shall not have a reversionary interest in the Net Settlement Fund. The Net Settlement Fund shall be distributed to the Authorized Claimants in accordance with the Plan of Allocation set forth in the Notice and approved by the Court. The Claims Administrator will make

1401419_4

reasonable and diligent efforts to have Class Members who are entitled to participate in the distribution of the Net Settlement Fund cash their distributions. If there is any balance remaining in the Net Settlement Fund after a reasonable period of time after the initial distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks, or otherwise), Lead Counsel, shall, if feasible, reallocate on a pro rata basis among Authorized Claimants who negotiated the checks sent to them in the initial distribution and who would receive a minimum of $10.00. These reallocations shall be repeated until the balance remaining in the Net Settlement Fund is *de minimis* and any remainder shall thereafter be donated to the Federal Judicial Center Foundation.

5.8    It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund, including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of this Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in the Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel the Stipulation or affect the finality of the Court's Order and Final Judgment approving the Stipulation and the Settlement set forth therein, or any other orders entered pursuant to the Stipulation.

5.9    Class Members and Defendants shall be bound by the terms of this Stipulation, irrespective of whether the Court disapproves or modifies the Plan of Allocation. The time to appeal from approval of the Settlement shall commence upon the Court's entry of the Order and Final Judgment regardless of whether a Plan of Allocation has been approved.

**6.    Lead Counsel's Attorneys' Fees and Expenses**

6.1    Lead Counsel may submit an application or applications (the "Fee and Expense Application") for: (a) an award of attorneys' fees; and (b) payment of expenses in connection with prosecuting the Litigation; and (c) any interest on such attorneys' fees and expenses at the same rate

and for the same periods as earned by the Settlement Fund (until paid). Any and all such fees, expenses, charges and costs awarded by the Court shall be payable solely out of the Settlement Fund. In addition, Lead Plaintiffs may seek payment from the Settlement Fund pursuant to 15 U.S.C. §78u-4(a)(4) for time and expenses incurred in representing the Class. Lead Counsel reserve the right to make additional applications for fees and expenses incurred, to be paid out of the Settlement Fund.

6.2    The Fee and Expense Award, as awarded by the Court, shall be paid to Lead Counsel from the Settlement Fund, as ordered, immediately upon execution of an order awarding such fees and expenses, notwithstanding the existence of any timely filed objection thereto, any appeal or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof. Lead Counsel may thereafter allocate the attorneys' fees among other Plaintiffs' Counsel, if any, in a manner which they, in good faith, believe reflects the contributions of Plaintiffs' Counsel to the initiation, prosecution, and resolution of the Litigation. Released Persons shall have no responsibility for, or liability whatsoever with respect to, the Fee and Expense Award or its allocation.

6.3    In the event that the Effective Date does not occur, or the Order and Final Judgment or Fee and Expense Award is reversed or modified, or the Stipulation is canceled or terminated for any other reason, and such reversal, modification, cancellation or termination becomes final and not subject to review, and in the event that the Fee and Expense Award has been paid to any extent, then such of Plaintiffs' Counsel who have received any portion of the Fee and Expense Award shall within ten (10) business days from receiving notice from the Defendants' counsel or from a court of appropriate jurisdiction, refund to the Settlement Fund such fees and expenses previously paid to them from the Settlement Fund plus the interest earned thereon at the same rate as earned on the Settlement Fund consistent with such reversal or modification. Any refunds required pursuant to this ¶6.3 shall be the several obligations of Plaintiffs' Counsel receiving fees or expenses to make

- 27 -

appropriate refunds or repayments to the Settlement Fund. Each such Plaintiffs' Counsel's law firm receiving fees and expenses, as a condition of receiving such fees and expenses, on behalf of itself and each partner and/or shareholder of it, agrees that the law firm and its partners and/or shareholders are subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this paragraph.

6.4     The procedure for and the allowance or disallowance by the Court of the Fee and Expense Application, or Lead Plaintiffs' expenses to be paid out of the Settlement Fund, are not part of the Settlement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement, and any determination by the Court regarding the Fee and Expense Application or Lead Plaintiffs' expenses shall not impact the finality, validity, and enforceability of the Settlement, this Stipulation, or the releases contained herein. Any order or proceeding relating to the Fee and Expense Application or Lead Plaintiffs' expenses or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Settlement, or affect or delay the finality of the Order and Final Judgment approving this Stipulation and the Settlement of the Litigation.

6.5     Any fees and expenses awarded by the Court shall be paid solely from the Settlement Fund. No Released Persons shall have any responsibility for any payment of any kind apart from payment of the Settlement Fund pursuant to ¶2.1.

**7.     Conditions of Settlement, Effect of Disapproval, Cancellation or Termination**

7.1     The Effective Date of the Stipulation shall be conditioned on the occurrence of all of the following events:

(a)     Execution of this Stipulation and such other documents as may be required to obtain final Court approval of the Stipulation in a form satisfactory to the Settling Parties;

- 28 -

(b)    the Court has entered the Preliminary Approval Order, as required by ¶3.1 hereof;

(c)    the Settlement Amount has been deposited in the Escrow Account, as required by ¶2.1 above;

(d)    the Defendants have not exercised their option to terminate the Stipulation pursuant to ¶7.4 hereof;

(e)    the Court has approved this Stipulation, following notice to the Class Members and the Final Approval Hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure;

(f)    the Court has entered the Order and Final Judgment in the form of Exhibit B attached hereto; and

(g)    the Order and Final Judgment has become Final, as defined in ¶1.16 hereof.

7.2    This is not a claims-made settlement.  As of the Effective Date, no Defendant or other Person shall have any right to the return of the Settlement Fund or any portion thereof for any reason.  Upon the occurrence of all of the events referenced in ¶7.1 hereof, any and all remaining interest or right of Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished.  If all of the conditions specified in ¶7.1 hereof are not met, then this Stipulation shall be cancelled and terminated subject to ¶7.5 hereof unless Lead Counsel and counsel for Defendants mutually agree in writing to proceed with the Settlement.

7.3    The Settling Parties shall have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so ("Termination Notice") to all other parties hereto within thirty (30) days of: (a) the Court's declining to enter a Preliminary Approval Order substantively identical to the Preliminary Approval Order submitted by the parties; (b) the Court's refusal to approve this Stipulation or a substantively identical Stipulation; (c) the Court's

1401419_4

declining to enter the Order and Final Judgment, or a substantively identical document; (d) the Order and Final Judgment being modified or reversed by the Seventh Circuit Court of Appeals or the Supreme Court in any manner that results in a document that is not substantively identical to the document submitted by the parties; (e) as otherwise set forth in the Settling Parties' Supplemental Agreement, as provided below; or (f) the Effective Date not otherwise occurring. No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation, or Exhibit A-2, or the amount of any attorneys' fees, costs, expenses, and interest awarded by the Court to Lead Counsel, Liaison Counsel, Lead Plaintiffs or Plaintiffs' Counsel, shall constitute grounds for cancellation or termination of the Settlement.

7.4     Notwithstanding any other provision or paragraph of this Stipulation, Defendants shall have the option (which option is to be exercised by the Company) to terminate the Settlement in the event that a portion of the Class, equal or greater than the portion specified in the separate supplemental agreement between Lead Counsel and Defendants' counsel (the "Supplemental Agreement") delivers timely and valid requests for exclusion from the Class. The Supplemental Agreement, which is being executed concurrently herewith, will not be filed with the Court unless requested by the Court or unless a dispute among the Settling Parties concerning its interpretation or application arises, and in that event, the Settling Parties will use their reasonable best efforts to file the Supplemental Agreement for the Court's in camera review and/or under seal.

7.5     In the event that the Stipulation is not approved by the Court or the Settlement set forth in the Stipulation is terminated or fails to become effective in accordance with its terms, the Settling Parties shall not forfeit or waive any factual or legal defense or contention in the Litigation and shall be restored to their respective positions in the Litigation as of March 14, 2018. In such event, the terms and provisions of the Stipulation, with the exception of ¶¶2.7, 2.10, 6.3, 7.5-7.6, 8.1-8.4, and 10.4-10.5 hereof, shall have no further force and effect with respect to the Settling Parties

and shall not be used in the Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*. No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation, or Exhibit A-2, or the amount of any attorneys' fees, costs, expenses, and interest awarded by the Court to Plaintiffs' Counsel shall constitute grounds for cancellation or termination of the Stipulation.

7.6     If the Effective Date does not occur, or if the Stipulation is terminated pursuant to its terms, neither Lead Plaintiffs nor Plaintiffs' Counsel shall have any obligation to repay any amounts actually and properly disbursed from the Settlement Fund for the Notice and Administration Costs of the Settlement pursuant to ¶2.8 hereof. In addition, any expenses already incurred and properly chargeable to the Settlement Fund for the Notice and Administration Costs of the Settlement pursuant to ¶2.8 hereof at the time of such termination or cancellation, but which have not been paid, shall be paid by the Escrow Agent in accordance with the terms of the Stipulation prior to the balance being refunded in accordance with ¶2.10 hereof.

## 8. No Admission of Wrongdoing

8.1     Defendants' execution of this Stipulation does not constitute an admission by any Defendant or their Related Parties: (i) of any wrongdoing, violation of law, or liability whatsoever; or (ii) that recovery could be had in any amount should the action not be settled. Defendants expressly deny that Lead Plaintiffs have asserted any valid claims as to any of them, and expressly deny any and all allegations of fault, damages, wrongdoing and liability and maintain that their conduct at all times was legal and proper.

8.2     Lead Plaintiffs' execution of this Stipulation does not constitute an admission by Lead Plaintiffs: (i) of the lack of any wrongdoing, violation of law, or liability on behalf of any Defendant whatsoever; or (ii) that recovery could not be had should the action not be settled.

8.3    Neither the Stipulation nor the Settlement, whether or not they are consummated, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement:

(a)    shall be offered against any of the Defendants or Released Persons as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Released Persons with respect to the truth of any fact alleged by Lead Plaintiffs, the validity of any claim that was or could have been asserted, or the deficiency of any defense that has been or could have been asserted in this Litigation or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Released Persons or in any way referred to for any other reason as against any of the Released Persons, in any civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

(b)    shall be offered against Lead Plaintiffs, as evidence of, or construed as, or deemed to be evidence of any presumption, concession or admission by Lead Plaintiffs that any of their claims are without merit, that any of the Released Persons had meritorious defenses, or that damages recoverable in this Litigation would not have exceeded the Settlement Amount or with respect to any liability, negligence, fault or wrongdoing of any kind, or in any way referred to for any other reason as against Lead Plaintiffs, in any civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation; or

(c)    shall be construed against any of the Released Persons or Lead Plaintiffs as an admission, concession, or presumption that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial.

- 32 -

8.4     Any Settling Party may file this Stipulation and/or the Order and Final Judgment in any action that may be brought to enforce the terms of the Stipulation or the Order and Final Judgment and specifically such documents may be filed by Defendants or their Related Parties in any subsequent insurance coverage litigation.

## 9.     Stipulation to Certification of the Class for Settlement Purposes Only

9.1     The Settling Parties agree that certification of the Class, for settlement purposes only, is appropriate in the Litigation.  For purposes of this Settlement only, the Class comprises all Members of the Class, as defined in ¶1.5 above.  Nothing in this Stipulation shall serve in any fashion, either directly or indirectly, as evidence or support for certification of a class other than for settlement purposes, and the Settling Parties intend that the provisions herein concerning certification of the Class shall have no effect whatsoever in the event the Settlement does not become Final, as defined in ¶1.16 above.

9.2     The Settling Parties therefore stipulate to:  (i) certification, for settlement purposes only, of the Class (as defined above), pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure; (ii) appointment of Lead Plaintiffs as the class representatives; and (iii) appointment of Lead Counsel as class counsel.  Certification of the Class shall be binding only with respect to the Settlement of the Litigation and only if the Order and Final Judgment contemplated by this Stipulation becomes Final and the Effective Date occurs.

## 10.     Miscellaneous Provisions

10.1     The Settling Parties (a) acknowledge that it is their intent to consummate this agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation, including in seeking Court approval of the Preliminary Approval Order, and to exercise their best efforts to accomplish the foregoing terms and conditions of the Stipulation expeditiously and to obtain final approval by the Court of the Settlement.  Joy

Global agrees to cooperate to the extent reasonably necessary to obtain the formal lists of stockholders entitled to vote on the Acquisition, i.e., those stockholders who were holders of record of Joy Global common stock at the close of business on September 1, 2016.

10.2   This Stipulation, the Exhibits attached hereto, and the Supplemental Agreement constitute the entire agreement between the Settling Parties as to the subject matter hereof and supersede any prior or contemporaneous written or oral agreements or understandings between the Settling Parties.  No representations, warranties, or inducements have been made to any party concerning the Stipulation, its Exhibits, or the Supplemental Agreement other than the representations, warranties, and covenants contained and memorialized in such documents.

10.3   Except as otherwise provided for herein, each party shall bear his, her or its own costs.

10.4   The Settling Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Litigation.  The Settlement compromises all claims that were contested in the Litigation and that could have been asserted in the Litigation and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense.  Pursuant to 15 U.S.C. §78u-4(c)(1), the Settling Parties agree and the Order and Final Judgment will contain a statement that, during the course of the Litigation, the Settling Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.  The Settling Parties agree that the amount paid to the Settlement Fund and the other terms of the Settlement were negotiated in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.  Whether or not the Stipulation is approved by the Court and whether or not the Stipulation is consummated, or the Effective Date occurs, the Settling Parties and their counsel shall use their best efforts to keep all settlement negotiations, settlement discussions and draft documents confidential; provided, however, that this paragraph (i) shall not

prevent the Settling Parties from making disclosures to their insurers, auditors, attorneys, officers, directors or associates, or disclosures to others as may be required by law, and (ii) shall not limit the materials or evidence that may be offered or referred to by the Settling Parties in disputes, actions, or proceedings arising between any Released Person and any insurer. The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the Litigation was brought or defended in bad faith or without a reasonable basis.

10.5    Except as otherwise provided for herein, all agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Stipulation.

10.6    The Settling Parties agree to take no action in connection with the Settlement that is intended to, or that would reasonably be expected to, harm the reputation of any of the Settling Parties (including a party's officers, directors, employees, agents, or attorneys), or that would reasonably be expected to lead to unfavorable publicity for any of the Settling Parties.

10.7    This Stipulation shall be construed and interpreted to effectuate the intent of the Settling Parties, which is to resolve completely those claims and disputes, including in this Litigation, and as more fully described herein.

10.8    All of the Exhibits to the Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

10.9    The Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

10.10   Neither the Class Members nor Defendants shall be bound by the Stipulation if the Court modifies any terms thereof, provided, however, that it shall not be a basis for Class Members to terminate the Settlement if the Court modifies any proposed Plan of Allocation or criteria for allocation of the Net Settlement Fund amongst Authorized Claimants, or Exhibit A-2 hereto, or if the

Plan of Allocation is modified on appeal. Nor shall it be a basis to terminate the Stipulation if the Court disapproves of or modifies the terms of this Stipulation with respect to attorneys' fees or expenses, or time or expenses awarded by the Court to Lead Plaintiffs, or interest as may be awarded by the Court, or the distribution of the Net Settlement Fund. Notwithstanding any such modification of the Plan of Allocation, or Exhibit A-2 hereto, or the terms of the Stipulation with respect to fees or expenses or interest, Defendants and their Related Parties shall be entitled to all benefits of the Settlement and shall not, under any circumstances, be called upon to contribute additional funds to the Settlement Fund.

10.11 Lead Plaintiffs and Lead Counsel represent and warrant that none of the Lead Plaintiffs' claims or causes of action referred to in this Litigation or this Stipulation has been assigned, encumbered, or in any manner transferred in whole or in part.

10.12 Each counsel or other Person executing the Stipulation or any of its Exhibits on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

10.13 All notices, requests, demands, claims, and other communications hereunder shall be in writing and shall be deemed duly given: (i) when delivered to the recipient; (ii) five (5) business days after being sent to the recipient by reputable overnight courier service (charges prepaid); or (iii) eight (8) business days after being mailed to the recipient by certified or registered mail, return receipt requested, and postage prepaid, and addressed to the intended recipient as set forth below:

**If to Lead Plaintiffs or to Plaintiffs' Counsel**:

David A. Knotts
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: (619) 231-1058
dknotts@rgrdlaw.com

**If to Defendants or to Defendants' Counsel**:

Vincent A. Sama

- 36 -

1401419_4

Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8708
vincent.sama@arnoldporter.com

Bryan B. House
Foley & Lardner LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202
Telephone: (414) 271-2400
bhouse@foley.com

Peter C. Hein
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, NY 10019
Telephone: (212) 403-1000
PCHein@wlrk.com

10.14   The Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of executed counterparts shall be filed with the Court. Signatures sent by facsimile or PDF via email shall be deemed originals.

10.15   The Stipulation shall be binding upon, and inure to the benefit of, the heirs, successors and assigns of the Settling Parties.

10.16   The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and the Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation.

10.17   The waiver by one party of any breach of this Stipulation by any other party shall not be deemed a waiver by any other party or a waiver of any other prior or subsequent breach of this Stipulation.

10.18   Pending approval of the Court of the Stipulation and its Exhibits, all proceedings in this Litigation shall be stayed and all Class Members shall be barred and enjoined from prosecuting any of the Released Claims against any of the Released Persons.

1401419_4

10.19 The Stipulation and the Exhibits attached hereto and the Supplemental Agreement shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of Wisconsin, and the rights and obligations of the parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Wisconsin without giving effect to that State's choice-of-law principles.

10.20 The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

10.21 This Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations between the Settling Parties and each of the Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys, dated May 22, 2018.

                                    ROBBINS GELLER RUDMAN
                                     & DOWD LLP
                                    RANDALL J. BARON
                                    DAVID T. WISSBROECKER
                                    DAVID A. KNOTTS

                                    DAVID A. KNOTTS

                                    655 West Broadway, Suite 1900
                                    San Diego, CA 92101
                                    Telephone: 619/231-1058
                                    619/231-7423 (fax)

                                    BRONSTEIN, GEWIRTZ & GROSSMAN, LLC
                                    PERETZ BRONSTEIN
                                    SHIMON YIFTACH
                                    60 East 42nd Street, Suite 4600
                                    New York, NY 10165
                                    Telephone: 212/697-6484
                                    212/697-7296 (fax)
                                    - 38 -

Lead Counsel for Lead Plaintiffs

KERKMAN WAGNER & DUNN
K. SCOTT WAGNER (SBN 1004668)
839 North Jefferson Street, Suite 400
Milwaukee, WI 53202
Telephone: 414/278-7000
414/278-7590 (fax)
ksw@wagner-lawgroup.com

Local Counsel

JOHNSON FISTEL, LLP
FRANK J. JOHNSON
600 West Broadway, Suite 1540
San Diego, CA 92101
Telephone: 619/230-0063
619/255-1856 (fax)

JOHNSON FISTEL, LLP
W. SCOTT HOLLEMAN
99 Madison Avenue, 5th Floor
New York, NY 10016
Telephone: 212/802-1486
212/602-1592 (fax)

Additional Counsel for Plaintiffs

FOLEY & LARDNER LLP
BRYAN B. HOUSE

BRYAN B. HOUSE

777 East Wisconsin Avenue
Milwaukee, WI 53202
(414) 271-2400
bhouse@foley.com

Attorneys for Defendants

i401419_4

ARNOLD & PORTER KAYE SCHOLER LLP
VINCENT A. SAMA
CATHERINE B. SCHUMACHER
DAPHNE MORDUCHOWITZ

_____
VINCENT A. SAMA

250 West 55th Street
New York, NY 10019
(212) 836-8000
vincent.sama@arnoldporter.com
catherine.schumacher@arnoldporter.com
daphne.morduchowitz@arnoldporter.com

Attorneys for Defendant Joy Global, Inc.

WACHTELL, LIPTON, ROSEN & KATZ
PETER C. HEIN

_____
PETER C. HEIN

51 West 52nd Street
New York, NY 10019
(212) 403-1000
PCHein@wlrk.com

Attorneys for Defendants *Edward L. Doheny II,
Steven L. Gerard, Mark J. Gliebe, John T.
Gremp, John Nils Hanson, Gale E. Klappa,
Richard B. Loynd, P. Eric Siegert and James H.
Tate*

1401419_4

CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2018, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 23, 2018.

s/ David A. Knotts
DAVID A. KNOTTS

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail: dknotts@rgrdlaw.com

# Mailing Information for a Case 2:16-cv-01229-PP Duncan v. Joy Global Inc et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Michael B Apfeld**
  mbapfeld@gklaw.com,bsweeney@gklaw.com

- **Philip C Babler**
  pcbabler@foley.com,pweisel@foley.com

- **Eugene Bykhovsky**
  eugene@byklaw.com

- **Kate E Gehl**
  kgehl@foley.com

- **Peter C Hein**
  PCHein@wlrk.com,Calert@wlrk.com

- **Bryan B House**
  bhouse@foley.com,sulness@foley.com

- **David A Knotts**
  dknotts@rgrdlaw.com,spatel@rgrdlaw.com

- **Daphne Morduchowitz**
  daphne.morduchowitz@apks.com,maoedwi@kayescholer.com

- **Howard A Pollack**
  hpollack@gklaw.com,TRaymond@gklaw.com

- **Elissa J Preheim**
  elissa.preheim@aporter.com

- **Vincent A Sama**
  vincent.sama@apks.com,maoedwi@kayescholer.com

- **Catherine B Schumacher**
  catherine.schumacher@apks.com,maoedwi@kayescholer.com

- **Thomas L Shriner , Jr**
  tshriner@foley.com,kszyszko@foley.com

- **K Scott Wagner**
  swagner@kwdlaw.com,aplichta@kwdlaw.com,lewert@kwdlaw.com

- **Zachary R Willenbrink**
  zwillenbrink@gklaw.com,kthompson@gklaw.com

- **David T Wissbroecker**
  dwissbroecker@rgrdlaw.com,jaimem@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Peretz              Bronstein
Bronstein Gewirtz & Grossman LLC
60 E 42nd St - Ste 4600
New York, NY 10165

Edward          M Gergosian
Robbins Geller Rudman & Dowd LLP
655 W Broadway - Ste 1900
San Diego, CA 92101

William             Scott Holleman
Johnson & Weaver LLP
99 Madison Ave - 5th Fl
New York, NY 10016

Frank           J Johnson
Johnson & Weaver LLP
600 W Broadway - Ste 1540
San Diego, CA 92101

Scott               B Schreiber
Arnold & Porter LLP
601 Massachusetts Ave - NW
Washington, DC 20001

Shimon              Yiftach
Bronstein Gewirtz & Grossman LLC
60 E 42nd St - Ste 4600
New York, NY 10165
```